D'Anjolell *v.* State Board of Funeral Directors.

Argued March 10, 1971, before Judges CRUMLISH, JR., MANDERINO and MENCER.

*John M. McAllister*, with him *McAllister, Rief & Shapiro*, for appellants.

*Walter W. Wilt*, Assistant Attorney General, with him *J. Shane Creamer*, Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 13, 1971:

Robert L. D'Anjolell is appealing an order of the State Board of Funeral Directors which suspended his funeral director's license for thirty days    We are asked to reverse this order and reinstate the license on the bases that the conclusions of the Board were not supported by substantial evidence and that certain regulations of the Board which appellant violated are unconstitutional.    Although our reasons for doing so differ in some instances from those directed to us by appellant, we agree that his license should be reinstated.

Appellant performed professional services as a funeral director for Mrs. Walter Westbrook whose hus-

band, a veteran of the Armed Forces, died on October 8, 1968. Subsequently, Mrs. Westbrook consulted with an Army Counsellor whose responsibility it was to advise veterans' widows of burial rights. A complaint ensued and after its investigation the State Board of Funeral Directors (Board) promulgated a citation and notice of hearing to appellant alleging certain improprieties under the Funeral Director Law, Act of January 14, 1952, P. L. 1898, Section 11, 63 P.S. §479.11, and the Board's regulations.

At the Board's hearing, the Commonwealth offered three witnesses to support the citation and appellant produced seven witnesses in rebuttal resulting in many evidentiary conflicts. Despite the complexity of the factual situation and the conflicting testimony proffered, the adjudication of the Board unearthed what we consider minimal findings of fact[1] and a brief recital of legal conclusions. They follow:

## "FINDINGS OF FACT

"From the testimony and exhibits before the State Board of Funeral Directors at the hearing held on April 7, 1969, the Board finds that Robert L. D'Anjolell, the Respondent:

"1. Is the holder of funeral director's license, No. 10152, issued August 17, 1960, to practice funeral directing in the Commonwealth of Pennsylvania.

"2. Did on or about October 12, 1968, set a contract price for funeral directing services clearly beyond

---

[1] These findings of fact were lifted almost verbatim from the paragraphs in the citation. The only substantive averment in the citation not accepted by these findings is as follows: "6. The Respondent, Robert L. D'Anjolell, did on or about October 12, 1968, and on various other occasions, fail to provide the family of one Walter Joseph Westbrook with services which he represented would be supplied by him; . . .".

the means of the family of one Walter Joseph Westbrook (N.T. 10, 12, 15, 16, 17, 18, 20, 32, 121, 122).

"3. Did on or about October 12, 1968, neglect to inform the family of one Walter Joseph Westbrook of certain benefits to which they were entitled (N.T. 7, 8, 15, 18, 22, 23, 36, 43, 44, 59, 61, 62, 63, 64, 65, 66, 77, 78, 79, 80, 117).

"4. Did on or about October 12, 1968, fail to submit a written statement of all services and furnishings to be supplied by him for the preparation and burial of one Walter Joseph Westbrook (N.T. 8, 12, 19, 27, 28, 37, 38, 116, 139).

"5. Did on or about October 12, 1968, fail to provide the family of one Walter Joseph Westbrook with a Wilbert Burial Vault as represented (N.T. 11, 12, 21, 46, 47, 50, 56, 107)."

"In a long line of cases it has been held that where an administrative agency, pursuant to delegated legislative power, promulgates an order, definitive, basic findings of fact are essential to the validity of its action, and such findings must be sufficiently specific to enable the court in reviewing that action to pass upon questions of law: [citations]." *Gottshall v. Batt,* 71 Dauph. 383, 399 (1958) The Administrative Agency Law, Act of June 4, 1945, P .L. 1388, Section 34, 71 P.S. §1710.34, which governed the proceedings in this case, see 63 P.S. §479.12, requires "findings and reasons for the adjudication." Where the findings fail to specify the alleged improprieties, they are "insufficient findings and any conclusions of law based upon them are without proper foundation." *State Board of Private Business Schools v. Thomasson,* 66 Dauph. 110, 119 (1954).

Finding of Fact Number 2 is not a finding of fact. Regulation 16.2 of the Board provides that one who sets a funeral fee "clearly beyond the means of the family"

is "unprofessional".[2] In doing so, it makes that phrase a legal definition calling for a legal conclusion. The Board's duty was to make findings of fact adduced from the evidence by which it could conclude that D'Anjolell had so set his price. There is no evidence to justify this conclusion. This Court will not speculate what the Board deemed to be the "means of the family". This finding by the Board is insufficient and cannot support the conclusion that Regulation 16.2 was violated.

Finding of Fact Number 3 is likewise insufficient. We refuse to guess which military benefits were and which were not disclosed to Mrs. Westbrook. Reading the record leads us to several conclusions. The insufficiency of this finding is of vital concern because the substance of this finding brings us to consider whether a funeral director has a duty to so inform his clients. Obviously, when we cannot with specificity pinpoint the benefits in issue, we cannot pass upon the underlying question of his legal duties. Finding Number 3 is insufficient and cannot support the conclusion of a violation.

Finding of Fact Number 5 is likewise ambiguous. Three witnesses testified on the question of whether D'Anjolell changed burial vaults with or without the consent of Mrs. Westbrook.[3] Also, there was extended

---

[2] Appellant has challenged the constitutionality of Regulation 16.2 which would require funeral directors to ascertain the financial status of prospective clients. It is apparent from the instant case that violations of this regulation are based upon actual compliance, without allowance for good faith efforts at ascertaining financial status. While we have grave doubts as to the validity of this regulation and while we could write tomes on its ramifications, the insufficiency of the findings of fact obviate our need to enter upon this question.

[3] Mrs. Westbrook testified that she had received no communication about the change, while D'Anjolell testified that he had negotiated the change by phone. One of D'Anjolell's employees corroborated this latter testimony.

interrogation whether the change and the billing was appropriate assuming agreement of the parties. Finding 5 is so vague that we have grave difficulty interpreting its meaning. For example: Was the evil to be found in the failure to *supply* the Wilbert Vault, or was it in the failure to *notify* Mrs. Westbrook of the intention to supply a different vault? Are we to dig further and find that D'Anjolell never communicated with Mrs. Westbrook? The Legislature never intended the courts to engage in mental roulette. The courts and the litigants are entitled to clear, precise and unambiguous statements of position from these quasi-judicial bodies. This is especially so where a citizen's professional pursuit is at stake. Finding of Fact Number 5 does not support the suspension.

The only remaining finding is that D'Anjolell failed to submit "on or about October 12, 1968" a written statement detailing the services he intended to provide. While we *could* hold this finding to be without substantial evidentiary basis,[4] its significance goes only to Regulation 16.3 which requires such a statement to be tendered *before burial*. There can be no doubt there is substantial evidence to support the conclusion that Regulation 16.3 was violated as to timeliness. But in our judgment this of itself cannot justify the imposition of a thirty day license suspension.

The Board concluded that D'Anjolell violated Sections 11(5) and 11(6) of the Funeral Director Law, 63 P.S. §§479.11(5) and 479.11(6). The former subsection requires "gross incompetency, negligence or misconduct in the carrying on of the profession." The Supreme Court has said ". . . misconduct may consist of the breach of any of the generally accepted canons

---

[4] The evidence clearly shows a bill sent out by October 28, 1968. We could hold this to be "on or *about* October 12, 1968." This once again points to the lack of specificity in the Board's findings.

of ethics and propriety *governing the respectful and reverential burial of the dead.*" (emphasis added). *Beatty v. State Board of Undertakers,* 352 Pa. 565, 568, 43 A. 2d 127 (1945). This does not encompass the failure to present a timely statement of services rendered.[5]

Section 11(6) undertakes to order suspension for failure to comply with Board regulations. D'Anjolell has indeed violated Regulation 16.3 but the intent of Section 11(6) does not call for suspension in that instance. With the exception of subsections (6) and (10) dealing with the violations of Pennsylvania and foreign professional regulations, all eleven subsections involve fraudulent or gross misconduct, dangerous conduct or unfair competition. We believe that the Legislature therefore intended Sections 11(6) and 11(10) to refer to violations of Board and foreign regulations involving similar fraudulent, unfair or dangerous conduct, other *nonminor* regulatory misconduct or total disregard of the regulations. The failure to provide a pre-interment bill of services rendered, however, is not a violation of *such magnitude* as to warrant suspension.

### ORDER

AND NOW, this 8th day of July, 1971, the Adjudication and Order of the State Board of Funeral Directors, issued August 4, 1969, is reversed and the license to practice funeral directing, Number 10152 issued to Robert L. D'Anjolell is hereby reinstated.

---

[5] We have doubts if *any* of the charges in this complaint would amount to "gross incompetency, negligence or misconduct" in relation to the "respectful and reverential burial of the dead".