Maytor H. McKinley, Jr., The Oliver H. Bair Company, Suburban-West, The Oliver H. Bair Company, William Rowen Grant Funeral Home, Inc., David G. Frankenfield and Sons, Inc., William F. Cushing, Inc., and Harvey W. Matlack, Appellants, v. Commonwealth of Pennsylvania, State Board of Funeral Directors, Appellee.

Argued September 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Matthew H. Strickler,* with him *Peter Platten, William Y. Webb, Alan M. Lieberman,* and, of counsel, *Ballard, Spahr, Andrews & Ingersoll,* for appellants.

*Lawrence Alexander,* Assistant Attorney General, with him *J. Justin Blewitt, Jr.,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., December 6, 1973:

This appeal is from an Adjudication and Order of the State Board of Funeral Directors (Board), dated March 9, 1973, revoking the funeral director licenses of the five corporate Appellants and Appellant Matlack for violating the Board's Regulation 16.17 which prohibits a licensed funeral director from having an interest in or being employed by any corporation or person with an interest in a cemetery or memorial park.

The genesis of the Board's action can be traced to July 14, 1970, when Appellant McKinley entered into an agreement to purchase the assets of a corporation which owned and operated Hatboro Cemetery, located in Hatboro, Montgomery County. McKinley, who was at the time and still remains the sole owner of the five corporate appellants and the employer of Appellant Matlack, requested a ruling from the Board that the acquisition, if consummated, would not constitute a

violation of either the Funeral Director Law[1] or the regulations promulgated thereunder. The Board responded, by a letter dated September 15, 1971, that it could not issue the requested ruling as the proposed acquisition would be violative of Regulation 16.17.

An appeal was taken from the Board's letter to this Court challenging the validity of Regulation 16.17. This Court held that the letter was not an appealable adjudication, and thus granted the Board's motion to quash the appeal. *McKinley v. State Board of Funeral Directors,* 5 Pa. Commonwealth Ct. 42, 288 A. 2d 840 (1972).

The Board subsequently issued a citation and notice of a hearing alleging that Appellants were in violation of Regulation 16.17. A hearing was held on December 5, 1972, and the parties hereto entered into a Stipulation. Among other things, it was agreed that Appellant McKinley is the sole owner of the stock of the licensed corporations and the equitable owner of Hatboro Cemetery; that if the acquisition of Hatboro Cemetery is consummated, the Cemetery and the licensed funeral director corporations will operate under common management and will be jointly advertised; and that customers of the licensed corporations will be offered, whenever feasible, a plot in the Hatboro Cemetery either separately or as part of an overall funeral arrangement, but with the affiliation between the funeral home and Cemetery affirmatively disclosed. On its part, the Board stipulated that it had never taken any action to prevent the common ownership of a funeral home and cemetery or crematorium, though it acknowledged that five funeral directors operated crematoria in Pennsylvania, and one other licensed funeral director owned a cemetery in the State. The Board fur-

[1] Act of January 14, 1952, P. L. (1951) 1898, as amended, 63 P.S. §479.1 et seq.

ther agreed to suspend any sanction imposed on Appellant should an appeal be taken to this Court to determine the validity of Regulation 16.17.

On the basis of this Stipulation, the Board revoked Appellants' licenses, and an appeal was taken to this Court, again challenging the validity of Regulation 16.17. Appellant does not here dispute that the business of funeral directing is within the Commonwealth's police power to regulate, *Rule v. Price,* 323 Pa. 139, 185 A. 851 (1936), app. dis'd 300 U.S. 639 (1937); *Grime v. Department of Public Instruction,* 324 Pa. 371, 188 A. 337 (1936); or that the State Board of Funeral Directors has the power to promulgate regulations relative to the proper conduct of such business. Act of January 14, 1952, P. L. (1951) 1898, 63 P.S. §479.16(a); *William H. Beard, Inc. v. State Board of Undertakers,* 65 Dauph. 364 (1954). The narrow question presented here is whether the Board exceeded the statutory authority conferred upon it by the Funeral Director Law in promulgating Regulation 16.17. Although Appellants also challenge the Regulation as violative of due process and equal protection as guaranteed by the federal and state constitutions, our disposition of the above issue obviates any need to reach the constitutional questions raised.

Regulation 16.17, which was adopted by the Board in 1961, provides as follows: "No licensed funeral director shall have any interest directly or indirectly in a cemetery or memorial park or no licensed funeral director shall act as a supervisor or in any way be engaged on behalf of or in any way be engaged with a licensed corporation directly or indirectly owned by a cemetery or by any person or persons having any interest direct or indirect in a cemetery or memorial park. Interest for the purpose of this regulation shall be defined as including employment or any other in-

terest held directly or indirectly by any person or persons and/or members of their immediate family."

The standard for testing the validity of administration rulemaking and regulations of this nature was succinctly expressed in *Commonwealth v. DiMeglio*, 385 P. 119, 124, 122 A. 2d 77, 80 (1956): "The power of an administrative agency to prescribe rules and regulations under a statute is not the power to make law, but only the power to adopt regulations to carry into effect the will of the Legislature as expressed by the statute: (Citations omitted)." *See also Firemen's Relief Association v. Minehart*, 430 Pa. 66, 241 A. 2d 745 (1968). Thus, in determining the outermost limits of the Board's delegated authority in the instant case, we must primarily consider the express language of its enabling statute, and, where the statute neither affirms nor negates the authority exercised by the agency, the manifest purpose of the legislation as culled from the circumstances surrounding its enactment and the prior legislative history on the same subject. Statutory Construction Act of 1972, Act of December 6, 1972, P. L. , No. 290, 1 Pa. S. §1921.

The business of funeral directing or undertaking has been subject to statutory regulation in Pennsylvania since 1895.[2] The Title of the present Funeral Director Law, as amended in 1968,[3] provides in pertinent part: "An Act to provide for the better protection of *life and health* of the citizens of this Commonwealth by requiring and regulating the *examination, licensure and registration* of persons and registered corporations engaging in the care, preparation and disposition of the bodies of deceased persons." (Emphasis added.) In upholding the constitutonality of a predecessor act, the Pennsylvania Supreme Court

[2] Act of June 7, 1895, P. L. 167.
[3] Act of July 31, 1968, P. L. 799, 63 P.S. §479.1.

stated: "The purpose of the Act was not to impose restrictions upon a trade or business-calling as such, but to protect the public health from the dangers attendant upon inexpert conduct of undertaking by those not qualified by the necessary knowledge or principles of sanitation and disease prevention." *Grime v. Department of Public Instruction*, 324 Pa. 371, 381, 188 A. 337, 341 (1936).

It is evident from a reading of the Title of the Act and the construction given the prior law by *Grime, supra*, that the purpose of the Funeral Director Law is to protect the public health and safety by assuring that the undertaking business is conducted by only qualified licensees under sanitary conditions. Nowhere in the present or prior law or prior regulations adopted by the Board can there be found any prohibition or restriction on the ownership of corporate licenses or of affiliated funeral facilities.[4] Regulation 16.17, on the other hand, by broadly prohibiting a licensed funeral director or his employer from having any interest in a cemetery or memorial park, goes beyond regulating conduct potentially injurious to the public health and welfare to a prohibition of the mere ownership of related facilities. While the vice to be remedied by this Regulation—i.e. the potential for "tying-in" or secretly packaging conventional funeral services with the sale of burial plots to the emotionally disadvantaged consumer—may well be recognized, we fail to find statutory support for the prophylactic means adopted by the Board.

---

[4] Although the present law permits the licensing of individuals only (63 P.S. §479.7), corporate licenses issued under the prior law may be continued under a grandfather clause (63 P.S. §479.9 (a)). The common ownership of licensed funeral director corporations is neither prohibited by the Funeral Director Law nor the Board's regulations. *See State Board of Funeral Directors v. The Oliver H. Bair Company, Suburban-West*, 41 Pa. D. & C. 2d 751 (C. P. Dauph. 1966).

We are referred to Sections 16(a), 11(5) and 11(11) of the Funeral Director Law in support of the Board's power to adopt the instant regulation. A review of each, however, leads us to conclude that these sections would only support a regulation promulgated thereunder limited to a prohibition of conduct rather than ownership incidental to such conduct. Section 16(a) authorizes the Board to "formulate necessary rules and regulations not inconsistent with this Act for the proper *conduct* of the business or profession of funeral directing and as may be deemed necessary or proper to safeguard the interests of the public and the standards of the profession." (63 P.S. §479.16) (Emphasis supplied.) Appellee would have us extrapolate this enabling provision with Section 11(5), which delineates "[g]ross incompetency, negligence or misconduct in the carrying on of the profession" as a grounds for suspension or revocation of a funeral director's license (63 P.S. §479.11(5)) to conclude that ownership of any interest in a cemetery by a licensed funeral director amounts to "misconduct," and, thus find a statutory basis for Regulation 16.17. "Misconduct," in this context, "may consist of the breach of the generally accepted canons of ethics and propriety governing the respectful and reverential burial of the dead." *Beatty v. State Board of Undertakers*, 352 Pa. 565, 568, 43 A. 2d 127, 128 (1945) ; *See also D'Anjolell v. State Board of Funeral Directors*, 3 Pa. Commonwealth Ct. 64, 280 A. 2d 123 (1971). Although we recognize that the Board must be allowed a large degree of latitude in defining what constitutes "misconduct," *Beatty, supra,* we are unable to understand, and we are cited no precedent, how the joint ownership of a funeral house and cemetery—openly advertised—could be construed as a breach of morturarial propriety or ethics so as to amount to "misconduct."

Section 11(11) cannot be as easily dismissed. This Section, which was added to the Funeral Director Law in 1968, provides as an additional ground for the suspension or revocation of a license the "[s]olicitation or acceptance by a licensee of any commission or bonus or rebate in consideration of recommending or causing a dead body to be disposed of in any particular crematory, mausoleum or cemetery" (63 P.S. §479.11). Although Section 11(11) postdated the promulgation of the instant regulation, it may be considered in determining the validity of the regulation. Amendatory provisions of a statute are to be read together with the remainder of the original statute and construed as passed at the same time. Statutory Construction Act of 1972, Act of December 6, 1972, P. L.      , No. 290, 1 Pa. S. §1953. The purpose of Section 11(11), however, was not to prohibit the cross-ownership of funeral facilities, but to prevent the payment of rebates, furtive or otherwise, to funeral directors for recommending customers to a particular cemetery or crematory. In this light, Section 11(11) would support a regulation more specifically aimed at preventing the payment of rebates, but not a regulation going beyond the prohibition of conduct to ownership per se.

This distinction, between a regulation directed at conduct versus ownership, has been recognized judicially in Pennsylvania and apparently by the Board itself. In *Grime, supra,* the Supreme Court considered the constitutionality of a provision of a predecessor statute interpreted by the then State Board of Undertakers to prohibit a licensee from operating branch funeral homes. In upholding the provision as construed, the Court was careful to note that the prohibition did not extend to common ownership of branch offices so long as each branch was operated by a licensed undertaker: "It is not a question here of prohibiting the mere ownership of two establishments by one person; the question is

whether or not the person may conduct and operate two or more subsidiary branches." (324 Pa. at 371, 188 A. at 342.)

Since this appeal was taken, the Board has published in the Pennsylvania Bulletin a proposed set of regulations containing a revision of Regulation 16.17. Proposed Regulation 18.20 provides as follows: "§18.20 Interest in a cemetery or memorial park—No licensed funeral director shall hold any business interest either directly or indirectly in any cemetery or memorial park and further shall not be employed by nor be engaged on behalf of any such cemetery or memorial park. For the purpose of this regulation, interest shall be defined as that being held by funeral directors or members of their immediate families."

Without considering the validity of this regulation, we think it is significant that the proposed regulation evidences a distinction between the regulation of conduct versus ownership insofar as a licensee employed by a person or corporation which also owns a cemetery is concerned. Under Regulation 16.17, Appellant Matlack's license was revoked, not because of any misconduct on his part, but because he had the misfortune of being employed by a licensed corporation whose owner, Appellant McKinley, acquired an interest in a cemetery. Under proposed Regulation 18.20, however, neither Appellant Matlack nor any of the Corporate Appellants would be subject to penalty, under the facts stipulated, so long as they are not employed on behalf of a cemetery. To this extent, the Regulation pertains to conduct within the Board's power to control, without extending to ownership interests which bear no relationship to a licensee's actions.

In conclusion, we find Regulation 16.17 to be beyond the scope of authority delegated to the Board by the Funeral Director Law. The Regulation, as such, is

invalid and cannot be the basis for the revocation of Appellants' licenses.

Accordingly, we enter the following

ORDER

AND NOW, this 6th day of December, 1973, the Adjudication and Order of the State Board of Funeral Directors, issued March 9, 1973, is reversed and the license to practice funeral directing, No. 5243 issued to Oliver H. Bair Company, Suburban-West; No. 4934 issued to Oliver H. Bair Company; No. 5858 issued to William Rowen Grant Funeral Home, Inc.; No. C91 issued to David G. Frankenfield and Sons, Inc.; No. 5668 issued to William F. Cushing, Inc., and No. FD 005795 issued to Harvey W. Matlack are hereby reinstated.