357 Pa. Superior Ct. 548 (1986)
516 A.2d 397
COMMONWEALTH of Pennsylvania
v.
Allen G. WASHINGTON, Appellant.
Supreme Court of Pennsylvania.
Submitted January 15, 1986.
Filed October 17, 1986.
*549 Richard S. Levine, Assistant Public Defender, Pittsburgh, for appellant.
Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellee.
Before CAVANAUGH, OLSZEWSKI and KELLY, JJ.
CAVANAUGH, Judge:
Appellant, Allen G. Washington, pled nolo contendre to a charge of retail theft and upon conviction was sentenced to imprisonment for a period of not less than seven nor more than fourteen months. The theft involved meat valued at $27.00 which Washington attempted to take from a market without payment. His appeal attacks the sentence as excessive and also asserts that the court improperly used misdemeanors not involving weapons in determining the prior record score for sentencing purposes. The trial court, in fact, used prior misdemeanor convictions in adding two points to the prior record score for sentencing guideline purposes. In Commonwealth v. Samuels, 354 Pa.Super. 128, 511 A.2d 221 (1986), a panel of this court held that *550 ". . . in computing a defendant's prior record score for sentencing purposes, a sentencing court cannot count that defendant's prior misdemeanor convictions not involving use of a deadly weapon." Since under the authority of Samuels the court improperly used misdemeanors in calculating the prior record score, we are constrained to vacate the sentence and remand for resentencing.[1] Since appellant must be resentenced, we do not reach the excessive sentence issue.
Sentence vacated. Remanded for resentencing. Jurisdiction relinquished.
KELLY, J., files dissenting opinion.
KELLY, Judge, dissenting:
I dissent. The majority relies upon the recent panel decision in Commonwealth v. Samuels, 354 Pa.Super. 128, 511 A.2d 221 (1986), in deciding that this case must be remanded for re-sentencing without resort to 204 Pa.Code § 303.7(a), which the panel in Samuels found unconstitutional. In Samuels, Judge Hoffman opined for the court that the Sentencing Commission had exceeded the scope of its legislative authorization in adopting 204 Pa.Code § 303.7(a) which provides for enhancement of the guideline sentencing ranges based upon prior misdemeanor convictions not involving the use of a deadly weapon. However, I cannot agree.
Upon review, I find that the Samuels decision is flawed in that: 1) it treats the enabling act as a penal law subject to the doctrine of strict construction, when in fact the enabling act creates and empowers a legislative commission *551 and is not in any sense a penal law; 2) it construes 42 Pa.C.S.A. § 2154(2) separately, and not in the context of 42 Pa.C.S.A. 2154 as a whole; and 3) it finds that the language of the enabling act is plate glass clear, when in fact the language is ambiguous. Furthermore, I would find that when the enabling act is construed in accordance with the Statutory Construction Act, 1 Pa.C.S.A. § 1901 et seq., the statute necessarily implies the authority to adopt the provision of the Sentencing Guidelines, 204 Pa.Code § 303.7(a), found unconstitutional in Samuels. Consequently, I dissent and would affirm the judgment of sentence.
On August 6, 1984, the appellant entered a Giant Eagle Supermarket in Pittsburgh, Pennsylvania. Security guards watched him stuff four packages of steaks into his pants. They then followed the appellant through the store and waited for him at the exit as he passed the check-out stand without paying for the steaks. The appellant was confronted by a security guard at the door, whereupon he turned and ran through the store towards the meat counter. The pursuing security guards subdued the appellant and retrieved the four packs of steaks he had attempted to steal. He was then detained by security personnel until city police arrived and placed the appellant under arrest.
On September 7, 1984, the appellant was charged by information with one count of Retail Theft. On January 24, 1985, the appellant appeared before the Honorable Loran L. Lewis and entered a plea of nolo contendere. Judge Lewis accepted the plea and proceeded to find the appellant guilty based upon the evidence presented. Appellant was sentenced on April 23, 1985, to a period of imprisonment of not less than seven (7), nor more than fourteen (14) months. Appellant was sentenced within the mitigated minimum sentencing range for the offense gravity and prior record score assigned. In calculating the appellant's prior record score under 204 Pa.Code § 303.7, the trial court included two points, pursuant to 204 Pa.Code § 303.7(a), to reflect the appellant's prior misdemeanor convictions. A timely motion to reconsider the sentence was filed on May 2, 1985. *552 This motion was denied on May 6, 1985. A notice of appeal was filed on May 22, 1985. This appeal followed.
The appellant raises two grounds for relief on appeal. First, the appellant argues that the sentence imposed was manifestly excessive under the facts and circumstances of this case. Secondly, the appellant contends that the sentence imposed pursuant to the sentencing guidelines was invalid [unconstitutional] in that the legislature did not grant the Sentencing Commission authority to establish the use of prior misdemeanor convictions not involving the use of deadly weapons as a method of enhancing sentences. I find no merit in these contentions.
The appellant's first contention,[1] regarding the alleged excessiveness of the sentence, was not properly preserved for review. In his brief to this Court the appellant argues that it was an abuse of the trial judge's discretion to fail to consider the evidence presented to establish the appellant's character and potential for rehabilitation. The appellant also contends that the trial judge failed to consider alternatives to a sentence of total confinement as required by 42 Pa.C.S.A. § 9721.
However, these issues were neither raised nor argued in the trial court. The appellant's only argument with respect to the alleged excessiveness of the sentence was that, after the two prior record score points which were attributable to prior misdemeanor convictions not involving the use of deadly weapons were deducted, the sentence was then manifestly excessive. (Motion to Reconsider Sentence at 2). The appellant's motion was insufficient to preserve the issues regarding mitigation evidence and sentencing alternatives. These issues are only preserved by specific and timely objections in a motion to reconsider sentence argued in the trial court. See Commonwealth v. Duffy, 341 Pa.Super. 217, 491 A.2d 230 (1985); Commonwealth v. Martin, *553 328 Pa.Super. 498, 477 A.2d 555 (1984). Thus, the appellant's first contention on appeal is without merit.[2]
The appellant next contends that the trial court erred in applying 204 Pa.Code § 303.7(a) to determine the proper sentencing range under the sentencing guidelines. The appellant argues that the express inclusion of felonies and crimes involving the use of deadly weapons in 42 Pa.C.S.A. § 2154(2) implies the exclusion of the consideration of prior misdemeanor convictions not involving the use of deadly weapons from calculation of the appellant's prior record score under the guidelines. The Court in Samuels agreed with this contention; I do not. My reasoning follows.
This case presents, primarily, a question of statutory construction. Although the appellant challenges the validity of 204 Pa.Code § 303.7(a), it is the legislative authorization in 42 Pa.C.S.A. § 2154 which controls, and which must be construed by this Court. If 204 Pa.Code § 303.7(a) was promulgated within the scope of authority delegated to the Sentencing Commission, it is constitutional; if not, it is unconstitutional.
In construing the enactments of the legislature, appellate courts must refer to the provisions of the Statutory Construction Act.[3] The legislature has directed that, "In the construction of the statutes of the Commonwealth, the rules set forth in this chapter shall be observed, unless the application of such rules would result in construction inconsistent with the manifest intent of the General Assembly." 1 Pa.C.S.A. § 1901. In 1 Pa.C.S.A. § 1921(a), (b) the legislature further explained that:

*554 (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
Thus, we must first determine whether the issue may be resolved by reference to the express language of the statute.
The statute at issue provides:
The commission shall adopt guidelines for sentencing within the limits established by law which shall be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant. The guidelines shall:
(1) Specify the range of sentences applicable to crimes of a given degree of gravity.
(2) Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon.
(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances.
42 Pa.C.S.A. § 2154.
In finding that 204 Pa.Code § 303.7(a) was unconstitutional, Judge Hoffman opined:
The language of the enabling act at issue here, § 2154(2), is plate glass clear: it does not state that the sentencing guidelines shall specify a range of sentences of increased severity for defendants previously convicted of misdemeanors not involving the use of a deadly weapon. If the Legislature wants to provide for such sentences, it must explicitly so state in the authorization provisions. Moreover, because § 2154(2) authorized the creation of guidelines "which shall be considered by the sentencing *555 court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant," (emphasis added), see also 42 Pa.C.S.A. 9721(b); 204 Pa.Code § 303.1(a), it is, in a sense, a penal provision. As such, it "shall be strictly construed." 1 Pa.C.S.A. § 1928(b). We are constrained, therefore, to find that, in computing a defendant's prior record score for sentencing purposes, a sentencing court cannot count that defendant's prior misdemeanor convictions not involving the use of a deadly weapon.
Samuels, 511 A.2d at 238. (Footnote omitted) (emphasis supplied). I find fault with this reasoning in several respects and therefore, I reject its conclusions.
First, the Court in Samuels incorrectly states that "because § 2154(2) authorized the creation of guidelines `which shall be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors,' (emphasis added), . . ., it is, in a sense, a penal provision. As such, it `shall be strictly construed.' 1 Pa.C.S.A. § 1928(b)." Samuels, 511 A.2d at 238. To the contrary, 42 Pa.C.S.A. § 2154 is in no sense a penal law, and consequently, need not be strictly construed. 1 Pa.C.S.A. § 1928(c).
"Penal laws" are defined as "all statutes and embodiments of the common law which establish, create or define crimes or offenses including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty." See Pa.R.Crim.P. 3(n); see also In re Investigating Grand Jury, 496 Pa. 452, 437 A.2d 1128 (1981); Commonwealth v. Cluck, 252 Pa.Super. 228, 381 A.2d 472 (1977). The enabling act, which this Court is called upon to construe, does not establish, create, or define any crime, offense, or ordinance. To the contrary, the enabling act creates and empowers a legislative commission to adopt sentencing guidelines. Clearly the enabling act is administrative, and not penal.
*556 It may be that the sentencing guidelines must be strictly construed;[4] but even accepting that proposition, it does not follow that the enabling act itself must be strictly construed because it authorizes the commission to adopt the sentencing guidelines. See Commonwealth by Creamer v. Monumental Properties, Inc., 459 Pa. 450, 460-461, 329 A.2d 812, 817 (1974), on remand 26 Pa.Cmwlth. 399, 365 A.2d 442 (1976) (merely because a statute contains a penal provision does not require that the entire statute be strictly construed); Commonwealth v. Broughton, 257 Pa.Super. 369, 378, 390 A.2d 1282, 1286 (1978) (rule of strict construction applies only to penal provisions of statute, and not to provisions regarding requirement of proof).
Secondly, the statute at issue is 42 Pa.C.S.A. § 2154 in its entirety, and not merely § 2154(2) as the Court in Samuels suggests.[5] Sections of a statute must be read together and construed with reference to the entire statute. See Wilson v. Central Penn Industries, 306 Pa.Super. 146, 452 A.2d 257 (1982). Moreover, only by construing each section of a statute in light of, with reference to, or in connection with the other sections of the statute, can a section's real meaning *557 and the legislative intent be ascertained. See Turner v. May Corp., 285 Pa.Super. 241, 427 A.2d 203 (1981).
By considering only the language of 42 Pa.C.S.A. § 2154(2), the Samuels panel ignored the broad grant of authority contained in the language of 42 Pa.C.S.A. § 2154 preceeding that particular sub-provision.[6] Moreover, by failing to construe the enabling act in the context of the legislative package in which it was passed, the Samuels panel ignored the significance of the compromise nature of the enabling act.
Thirdly, I reject the characterization of the enabling act as "plate glass clear." Assuredly, "we have no authority to befog the plate glass clarity of [a legislative enactment.]" Port Authority v. Amalgamated Transit Union, Local Division 85, 430 Pa. 514, 520, 243 A.2d 433, 436 (1968) (Concurrence by Musmanno, J.). On the other hand, "nothing ambiguous can be said to be clear." Sterling v. Philadelphia, 378 Pa. 538, 559, 106 A.2d 793, 803 (Dissent by Musmanno, J.). The clarity which this Court found in Samuels is illusory. It is founded upon the unspoken and unsupported assumption that because the numbered subprovisions of § 2154 are mandatory they must necessarily be exclusive. Thus, the Court presumed that because the Commission was required to "specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon," 42 Pa.C.S.A. § 2154(2), that the Commission was precluded from considering misdemeanors not involving the use of a deadly weapon in constructing the prior record enhancement provisions of the sentencing guidelines. I find no support for this construction in the express language of the statute.[7]
*558 The appellant contends that the ancient maxim "expressio unius est exclusio alterius" (the expression of one thing implies the exclusion of others), makes the plain meaning of the statute clear. This contention is plainly without merit. "The maxim [expressio unius est exclusio alterius] is not of universal application, but is to be applied only as an aid in arriving at intention and not to defeat the apparent intention." Fazio v. Pittsburgh Rys. Co., 321 Pa. 7, 11-12, 182 A. 696, 698 (1936), quoting 25 R.C.S., page 981, § 229; See also Commonwealth v. Kramer, 146 Pa.Super. 91, 22 A.2d 46 (1941). The maxim defines by implication, and is of no assistance in determining the plain meaning of the express language. Compare § 1921(b) and § 1921(c).
Thus, the enabling act contains an apparent ambiguity with respect to whether the numbered subprovisions were intended to be mandatory and exclusive or merely mandatory. The apparent ambiguity in the statute, however, does not negate the authority of the Commission to promulgate the rule. "While it is true that statutory language confering power to administrative agencies must be clear and unmistakable, Green v. Milk Control Commission, 340 Pa. 1, 16 A.2d 9 (1940), it is also true that language capable of more than one meaning can be `clear and unmistakable' in the context of its usage by the selection of the meaning which is neither forced, strained, nor contrary to the purpose for which the authority is conferred." Commonwealth v. Butler County Mushroom Farm, 499 Pa. 509, 516, 454 A.2d 1, 5 (1982). (Emphasis added).
It is well settled that powers delegated to administrative bodies may be expressly stated or necessarily implied in the legislative grant, see Pennsylvania Human Relations Commission v. St. Joe Minerals Corp., 476 Pa. 302, 310, 382 A.2d 731, 736 (1978). It has also been held that "[I]n determining the outermost limits of [a] Board's delegated authority . . . we must primarily consider the express language of its enabling statute, and, where the statute neither *559 affirms nor negates the authority exercised by the agency, the manifest purpose of the legislation. . . ." McKinley v. State Bd. of Funeral Dir., 11 Pa.Cmwlth. 241, 246, 313 A.2d 180, 183 (1973). (Emphasis added). See also Upper St. Clair Twp. v. Comwlth., Dept. of Community Affairs, 478 Pa. 546, 561, 387 A.2d 456, 464 (1978) (One litmus of . . . authority is the purpose for which authority was conferred).
Therefore, we must look to the legislative intent. Section 1921(c) provides:
When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S.A. § 1921(c). Discussion of the above factors and analysis follows.
First, it is necessary to examine the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, and the former law. Essentially, we must consider the historical context in which the statute was adopted. The distinguished jurist Oliver Wendell Holmes, Jr. explained:
The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only axioms in a book of mathematics. In order to know what it is, we must know what it has been, and what it tends to become. We must alternatively *560 consult history and existing theories of legislation. But the most difficult labor will be to understand the combination of the two into new products at every stage.[8]
Federal and state governments have struggled to establish fair and reasonable means for sanctioning the offender since the prison system was first introduced shortly after the American Revolution. However, the widespread sentencing reform of the past decade is unprecedented. Sentencing reform was proposed by virtually all state legislatures during the 1970s, and only the wave of prison reform in the late 1800s is comparable.[9] During the early and middle 1970's the former system of indeterminate sentencing came under criticism from a wide spectrum of political interests. While commentators were uniform in their criticism of the indeterminate sentencing system, they were divided as to the proper focus for reforms.
A number of commentators focused on reforms involving mandatory sentences for violent crimes and sentences of increased severity for repeat offenders.[10] Popular sentiment favored mandatory prison sentences for offenders using deadly weapons. This sentiment was translated into legislative action in many states.[11] Several studies indicated, however, that enforcement of mandatory sentences would be expensive and not cost-effective.[12] Other studies indicated that repeat violent offenders committed a disproportionately *561 high portion of the total crimes committed.[13] One of the products of this research was the passage of minimum mandatory sentence laws for repeat offenders in 27 states between 1977 and 1980, with similar laws being considered in 14 other states.[14]
Other commentators were concerned with the disparity in the severity of sentences imposed under the indeterminate sentencing system.[15] A study of sentences imposed in federal district courts revealed wide disparity in decisions to incarcerate, length of sentence imposed, and application of statutory provisions regarding parole and probation eligibility. A Pennsylvania study using 1977 statistics revealed significant regional disparity with regard to incarceration rates. While 38.9% of all offenders statewide were incarcerated, rural areas had nearly double the incarceration rate of Allegheny or Philadelphia counties.[16] This disparity led to a movement in favor of general sentencing reform.[17]
It was in this context of national sentencing reform that the Pennsylvania General Assembly began the legislative *562 process which would eventually lead to the passage of a legislative package which included the provisions of 42 Pa.C.S.A. § 2154. It is in this context that we must determine the legislative intent.
In 1976, the Senate adopted an amendment to Senate Bill 995 which would mandate minimum prison sentences for certain violent felonies. After a long legislative battle the bill was defeated in the House.[18] For the next two years the House and Senate proposed and debated, but failed to pass numerous sentencing reform bills proposed in both chambers.[19] The General Assembly was divided as to the proper focus for reform. The Senate leadership supported mandatory minimum sentences for repeat violent offenders; while the House leadership pressed for general sentencing reform through the adoption of uniform guidelines.[20]
On September 21, 1978, the deadlock was broken when the House approved Senate Bill 195 which the House amended by adding to it the provisions of House Bill 953 (which had languished in the Senate Appropriations Committee since June 13, 1978). The Senate rejected the amendments initially and appointed three Senators to a joint House-Senate conference committee. The House reciprocated. The conferees reached an accord on a compromise proposal. On November 15, 1978 both chambers signed the bill; it was approved by the Governor on November 26, 1978.[21]
*563 The resulting legislation was a product of compromise; its structure reflects compromise. The Sentencing Commission was formed, empowered, and directed to adopt guidelines.[22] At the same time the Senate conferees were successful in having interim guidelines passed which would require sentencing judges to consider a four year minimum prison sentence for defendants convicted of certain violent felonies who had previously been convicted of one of the same designated violent felonies.[23] Additionally, a specific provision requiring increased sentences for prior felony or weapons offense convictions was included in the guideline authorization provisions.[24] Thus, the Senate conferees were able to superimpose the specific interests of the Senate upon the outline for broad reform proposed by the House.
The legislative authorization was conferred upon the Sentencing Commission in the first part of 42 Pa.C.S.A. § 2154 with sweeping language:
The commission shall adopt guidelines for sentencing within the limits established by law which shall be considered by the sentencing court in determining the appropriate sentence for felonies and misdemeanors committed by a defendant.
The only express reservation included in the authorization was that the guidelines be established "within the limits established by law." It is within this broad grant of authority that I would find the authority to adopt 204 Pa.Code § 303.7(a) necessarily implied.
It is important to note that when the enabling act was passed, there was no reason for the legislature to restrict the Commission's discretion in formulating the guidelines. The legislature had already ensured that it would have a strong voice in the formulation of the guidelines, and final approval of the guidelines after they were proposed. First, *564 the Commission was to be comprised of eleven members, four of which were required to be members of the legislature. 42 Pa.C.S.A. § 2152. Secondly, the legislature reserved the power to reject the guidelines by concurrent resolution. 42 Pa.C.S.A. § 2155(b).
Senator Gekas stated during the Senate debate over the January 1981 draft of the proposed guidelines that:
. . . we on the Commission, which included two Members of the Senate, followed the mandate of our legislation which said go to the drawing boards of the criminal statutes and create a set of guidelines within those statutes that would ensure as best as humans can insure to shrink the disparity between sentences that are given out. . . .
1 Senate Leg.J. 401 (1981). (Emphasis added). The legislature had vested the Commission with virtually unlimited discretion in the formulation of sentencing guidelines within the statutory limits.[25]
It is apparent from the legislative history that § 2154(2) was adopted as part of the compromise between the Senate and the House, and was intended to assure the Senators that the guidelines would address their specific concerns with respect to repeat violent offenders. See 1 Senate Leg.J. 403 (1981) (Remarks of Sen. O'Pake: ". . . we settled for the only compromise we could get in 1978. . . ."); see also 1 House Leg.J. 561 (1981) (Remarks of Rep. McVerry:
*565 "The Sentencing Commission was established . . . for two reasons. . . . One of those reasons was to avoid mandatory sentencing that was being proposed."). In this compromise process, there is no indication of an intent by the legislature to limit or otherwise alter the use of prior misdemeanor convictions in the fashioning of an appropriate sentence for an offender. See generally 1 House Leg.J. at 559-567 (1981); 1 Senate Leg.J. at 401-408 (1981).
It is also apparent from a review of legislative actions regarding the enabling act and the guidelines that the legislature did not perceive 204 Pa.Code § 303.7 to have been adopted outside the authority conferred by 42 Pa.C. S.A. § 2154. The sentencing reform process began in the legislature, in 1976. After two years of debate, a compromise was reached, and the legislation under review was passed and became law.
The initial proposed guidelines were published in October 1980. However, these guidelines were severely criticized as too lenient and too restrictive of judicial discretion.[26] The proposed guidelines were revised and republished in January, 1981.[27] The legislature responded in April, 1981 with the passage of the Hagarty Resolution. While stopping short of rejecting the guidelines outright, the resolution urged and directed the commission to increase the upper limits of guideline sentences, give judges greater lattitude in sentencing where aggravating and mitigating circumstances were found, eliminate the exclusive list of such circumstances, and increase the severity of sentences for offenses against persons.[28] Significantly, the legislature made no mention, negative or otherwise, of the prior record *566 provisions concerning prior misdemeanor convictions not involving the use of a deadly weapon, which were part of the legislation being criticized, and which the Samuels panel found to have violated the "plate glass clarity" of the legislative authorization.
In January 1982, when the Commission presented a new set of guidelines, the provision found unconstitutional by the Samuels panel, remained in the guidelines. The Senate expressly approved the guidelines in Senate Res. 227 and the House took no action on them within the 90 day period specified by the Act. They became effective on July 22, 1981. See Kuphal, 500 A.2d at 1212.
The guidelines as finally adopted were an expression of the legislature's intent. The guidelines were subjected to the closest scrutiny at every stage in the adoption process. The Senate expressly approved the guidelines by resolution and the House implicitly approved them by silence.[29] In Commonwealth v. Frazier, 347 Pa.Super. 64, 69, 500 A.2d 158, 161 (1985), this Court recognized that the guidelines expressed the intent of the legislature when we stated, "[t]here was virtually no opposition to the Guidelines as finally adopted by the legislature." It defies common sense and logic to suggest that throughout the four year adoption process, and the four years the guidelines have been law, that the General Assembly has sat idle and mute while guidelines which it neither authorized nor intended became and remained law.[30]
*567 The legislature has directed that in the interpretation of legislative enactments the courts are to consider "the consequences of a particular interpretation." 1 Pa.C.S.A. § 1921(c)(6). The legislature has also created a statutory presumption that, "the General Assembly does not intend a result which is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1). The Samuels construction leads to just such results.
Significantly, I find that the construction imposed upon the enabling act by the Samuels panel, leads to results which could decimate enforcement of sentencing uniformity, thereby frustrating the primary purpose of the legislation. In Commonwealth v. Stevens, 349 Pa.Super. 310, 313, 503 A.2d 14, 16 (1986), and Commonwealth v. Royer, 328 Pa.Super. 60, 66, 476 A.2d 453, 456 (1984), this Court stated that, "The purpose of the sentencing guidelines is to insure that more uniform sentences are imposed in this Commonwealth." In Samuels, however, this Court opened the flood gates for evasion and variance.
Under the guidelines as adopted, all prior misdemeanor and felony convictions are used in calculating the offender's prior record score. Consequently, prior record is, ordinarily, not a factor in determining whether aggravated circumstances are present or in considering whether the offender should be sentenced outside of the guidelines. (See Stevens, supra; Commonwealth v. Drumgoole, 341 Pa.Super. 468, 473, 491 A.2d 1352, 1354 (1985));[31]see also, Implementation Manual of the Pennsylvania Commission on Sentencing, Part V., at 15 (1982).
Under Samuels, however, prior misdemeanors not involving the use of a deadly weapon may not be used in calculating *568 the offender's prior record score. Consequently, our rulings in Stevens and Drumgoole, that factors considered within the guidelines provide no basis to sentence in the aggravated range or outside the guideline ranges, no longer apply with respect to prior misdemeanors not involving the use of a deadly weapon. The result is that a sentencing judge may sentence in the aggravated range or outside the guideline sentencing ranges, where the offender's prior record includes such misdemeanors. Samuels, 511 A.2d at 239 n. 22. Because prior misdemeanor convictions not involving the use of deadly weapons are frequently present, the potential for evasion and variance is great.
Finally, administrative and legislative interpretations of the statute must be considered. 1 Pa.C.S.A. § 1921(c)(8). The construction of 42 Pa.C.S.A. § 2154 by the Sentencing Commission is entitled to deference by this Court. A construction of a statute by those charged with its execution is entitled to great weight, and should not be disregarded or overturned except for cogent reasons and unless it is clear that such a construction is erroneous. Dear v. Holly Jon Equipment Co., 283 Pa.Super. 74, 423 A.2d 721 (1980); Spicer v. Department of Public Welfare, 58 Pa.Cmwlth. 558, 428 A.2d 1008 (1981). Furthermore, "administrative interpretations, not disturbed by the legislature, are appropriate guides to legislative intent." MacLeod, supra.
The Sentencing Commission was comprised of four eminent jurists, four members of the General Assembly, a District Attorney, a Defense Attorney, and a Law Professor. Each member was selected for his legal acumen. Assuredly, their construction of the statute is entitled to some deference. Moreover, the misdemeanor provisions were a focus of continuous debate and revision by the Commission. The Commission altered the prior misdemeanor provisions of the Offender Score no less than six times during the adoption process. Importantly, the Commission considered the precise issue raised in the instant appeal.
At the June 29, 1981 meeting of the Commission, Judge Scirica expressed his concern that the legislature did not *569 authorize enhancement for prior convictions of misdemeanors not involving the use of a deadly weapon. A motion to delete the prior misdemeanor provisions from the Offender Score passed over the opposition of both of the members from the General Assembly who were present. However, at the September 25, 1981 meeting, the Commission reversed its previous decision. Senator Gekas moved that prior misdemeanor convictions be included in the Offender Score provisions. The motion carried without opposition, with Judge Scirica and all three members of the General Assembly who were present voting in favor of the motion.[32]
The Commission considered the issue and found that provisions providing for the enhancement of sentence based upon prior misdemeanor convictions not involving the use of a deadly weapon could be adopted within the scope of the legislative authorization. This deliberate decision by the Commission was entitled to deference by this Court. This is especially true, in light of the legislature's actions in approving the guidelines and allowing them to remain law for the past four years.

CONCLUSION
Having duly considered the factors enumerated in 1 Pa.C. S.A. § 1921(c), I would find that the numbered subprovisions of 42 Pa.C.S.A. § 2154 were intended to be mandatory, but not exclusive. Because interests in sentencing uniformity required that a factor as significant and as common as prior misdemeanor convictions not involving the use of deadly weapons be specifically dealt with in the guidelines, and because uniformity in sentencing was the primary purpose of the legislation, I would find that the authority to adopt 204 Pa.Code § 303.7(a) was necessarily implied in the authority confered by 42 Pa.C.S.A. § 2154. See McKinley v. State Bd. of Funeral Directors, supra, 313 A.2d at 183. Because the construction imposed upon *570 the enabling act by the Samuels panel would frustrate this purpose, I find that the Samuels construction must be rejected. See Commonwealth v. Butler County Mushroom Farm, supra, 454 A.2d at 5.
Finally, I would add that I believe that the exercise of the power of judicial nullification in Samuels was unwarranted. I take consolation, though, in the fact that the legislature is free to alter the effect of the judicial construction of the statute with remedial legislation. The legislature has already begun this process. See House Bill 1498, 169th Session (Pa. 1985) (Bill reported to Joint Conference Committee with identical language amending 42 Pa.C.S.A. § 2154(2) to expressly authorize use of juvenile adjudications and prior misdemeanor convictions not involving the use of a deadly weapon to enhance sentences). This, of course, is further evidence of the legislature's intent in this regard.
Based upon the foregoing reasons, I would uphold the validity of 204 Pa.Code § 303.7(a) and affirm the judgment of sentence.
NOTES
[1] Appellee argues that since the same sentence could have been given under the sentencing guidelines even if the two points for prior record score was not considered, we should affirm since appellant has shown no prejudice. However, the sentencing guidelines provide a substantial range of minimum sentences including a mitigated range which, if chosen, would necessarily place this sentence substantially below the sentence given. Since we have no way of knowing the effect which the prior record score had on the trial court's sentencing decision, appellant is entitled to be resentenced.
[1] Because the majority reversed and remanded for re-sentencing based upon Samuels, they found it unnecessary to address the appellant's claim that the sentence was excessive. Because I would affirm the judgment of sentence, I must address this claim, as well as the constitutionality issue.
[2] I note, however, that the sentencing court received a presentence investigation report and entertained argument from appellant's counsel and testimony from the appellant and his wife prior to sentencing. Significantly, the appellant was sentenced in the mitigated minimum range for the offense gravity and prior record score assigned. Thus, the record indicates that the trial court not only considered the mitigation evidence, but in fact acted upon the mitigation evidence by sentencing the appellant within the mitigated minimum range of the sentencing guidelines.
[3] 1 Pa.C.S.A. § 1901 et seq.
[4] It is true that the guidelines have a significant impact upon the sentences actually imposed. However, the guidelines do not establish, create, or define any crimes, offenses or ordinances. They become applicable only after a defendant has been duly convicted of a crime for which he is to be punished. The guidelines do not effect the maximum penalties which may be imposed upon conviction. 42 Pa.C.S.A. § 2154; 204 Pa.Code § 303.1(i). The guidelines merely structure the manner in which the judiciary may exercise the discretion which the legislature has chosen to vest in the courts. See Commonwealth v. Wright, 508 Pa. 25, 40, 494 A.2d 354, 362 (1985), aff'd sub nom., McMillan v. Pennsylvania, ___ U.S. ___, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

Though the guidelines may result in higher minimum sentences in particular cases, they do so only by restricting the sentencing judge's discretion with respect to existing penalties and not by creating new perils for the offender. Consequently, I see no reason to apply the doctrine of strict construction to the guidelines or the enabling act. Indeed, by restricting the arbitrary exercise of judicial discretion, the guidelines appear more remedial than penal. See 1 Pa.C.S.A. § 1928(c).
[5] I note that § 2154(2) contains no authorization to the Commission whatsoever; hence, construction of § 2154(2) without reference to the remaining provisions of § 2154 is a futile exercise if determining the scope of the legislative authorization is the purpose of such inquiry.
[6] "The Commission shall adopt guidelines for sentencing within the limits established by law. . . ." 42 Pa.C.S.A. § 2154.
[7] The fact that § 2154(2) is mandatory resolves nothing. The statute may still mean either: the Commission was required to consider only the designated factors; or the Commission was required to consider the designated factors among other factors to be taken into consideration. Hence, ambiguity remains and the statute cannot be said to be plate glass clear.
[8] Oliver Wendell Holmes, Jr., The Common Law, at 5 (Howe, Ed. 1963).
[9] Miller, Roberts, and Carter, Sentencing Reform: A review and annotated bibliography, at 6 (National Center for State Courts 1981).
[10] See Martin, Interests and Politics in Sentencing Reform: The Development of Sentencing Guidelines in Minnesota and Pennsylvania, 29 Vill.L.Rev. 21, 22-27, nn. 4, 17-20 (1983-84) (hereinafter Martin).
[11] Yeager, "Do Mandatory Prison Sentences for Handgun Offenders Curb Violent Crime, at 1, 27, (U.S. Gov. Printing Office, Washington, D.C. 1976) (hereinafter Yeager).
[12] For example: Yeager, supra; J. Peterailia and P. Greenwood, "Mandatory Prison Sentences: Their Projected Effects on Crime and Prison Populations," at 23-28 (U.S. Gov. Printing Office, Washington, D.C. 1977).
[13] For example: M. Peterson and H. Braiker, Doing Crime: A Survey of California Prison Inmates (U.S. Gov. Printing Office, Washington, D.C., Nov. 1980); J. Peterailia, P. Greenwood, and M. Lavin, Criminal Careers of Habitual Felons (U.S. Gov. Printing Office, Washington, D.C., July 1978); Curbing the Repeat Offender: A Strategy for Prosecutors, (U.S. Gov. Printing Office, Washington, D.C., Sept. 1977).
[14] Martin, at 23, n. 4.
[15] See generally Kittrie and Zenoff, Sanctions Sentencing and Corrections, Ch. 12 "Reforming Sentencing," at 526-576 (Foundation Press 1981) (hereinafter Kittrie); see also Martin, at 22-27, & nn. 2, 7, 15, & 20.
[16] See Legislation to Revise and Recodify Federal Criminal Laws: Hearings on H.R. 6869, Before the Subcomm. on Criminal Justice of the House Comm. on Judiciary, 95th Cong. 1st & 2nd Sess. 52, part 3 (1977-1979) (statement of W.J. Anderson, Deputy Director, Gen. Gov't. Div. of G.A.O., on Disparities in Criminal Sentencing and Prosecutive Practices in Fed.Dist.Ct.), p. 2464; Pennsylvania Commission on Sentencing, Report on the Potential Impact of the Proposed Initial Guidelines on Incarceration Rates and Incarceration Lengths in Pennsylvania, unpublished (Nov. 6, 1980); See also Martin, at 76.
[17] Kittrie at 547-554; Martin, at 23, nn. 6 & 7. See also Commonwealth v. Kuphal, 347 Pa.Super. 572, 581-82, 500 A.2d 1205, 1210 (1985) (Dissent by Spaeth, P.J.) (history of sentencing commission concept).
[18] S.B. 995, 159th Session (Pa. 1975) (Amended June 30, 1976). See Final Senate History, Session 1975 and 1976, at A-132; See also 1 House Leg.J. 6442 (1976).
[19] Senate proposals included: S.B. 168, 159th Session (Pa. 1975); S.B. 195, 161st Session (Pa. 1977); S.B. 639, 161st Session (Pa. 1977); S.B. 792, 161st Session (Pa. 1977); S.B. 1498, 162nd Session (Pa. 1978). House proposals included: H.B. 196, 161st Session (Pa. 1977); H.B. 168, 161st Session (Pa. 1977); H.B. 953, 161st Session (Pa. 1977); H.B. 1469, 161st Session (Pa. 1977); H.B. 2474, 162nd Session (Pa. 1978); H.B. 2549, 162nd Session (Pa. 1978).
[20] Martin, at 62.
[21] Martin, at 62-66; S.B. 195, 161st Session (Pa. 1977), sponsored by Sen. Jubelirer; et al.; H.B. 953, 161st Session (Pa. 1977), sponsored by Rep. Scirica, et al.
[22] See 42 Pa.C.S.A. § 2151, 42 Pa.C.S.A. § 2152, 42 Pa.C.S.A. § 2153, 42 Pa.C.S.A. § 2154, and 42 Pa.C.S.A. § 2155. (These sections are successors to 1978, Nov. 26, P.L. 1316, No. 319 § 3).
[23] 1978, Nov. 26, P.L. 1316, No. 319 § 5; reprinted at 42 Pa.C.S.A. § 9721, at 333.
[24] 42 Pa.C.S.A. § 2154(2).
[25] The remainder of the enabling act contained three minimum requirements for the guidelines:

The guidelines shall:
(1) Specify the range of sentences applicable to crimes of a given degree of gravity.
(2) Specify a range of sentences of increased severity for defendants previously convicted of a felony or felonies or convicted of a crime involving the use of a deadly weapon.
(3) Prescribe variations from the range of sentences applicable on account of aggravating or mitigating circumstances.
The Sentencing Commission elected to exercise its broad powers in a format which divided the appropriate sentencing factors into three categories: Offense Gravity Score, Offender Score and Aggravating or Mitigating Ranges. These categories correspond to but are not limited to, the factors covered by the mandatory considerations in the subprovisions of the enabling act.
[26] See Pennsylvania Commission on Sentencing, Synopses of Public Hearing Testimony Prepared by the Staff, unpublished (December 1980) (on file with the Pennsylvania Commission on Sentencing).
[27] I note that provisions requiring enhancement of the sentencing guideline range based on prior misdemeanor convictions not involving use of a deadly weapon were included in the initial and revised guideline proposals.
[28] House Res. 24 was passed by the House 157-37 on April 1, 1981, 1 House Leg.J. 566-67 (1981), and by the Senate 34-10 on April 8, 1981, 1 Senate Leg.J. 409 (1981). See also Kuphal, 500 A.2d at 1212.
[29] See Martin at 98-99 & nn. 371-372. (Rep. Hargarty praised the final proposed guidelines, and all other former opponents were silent).
[30] The fact that the guidelines were not adopted by concurrence of both Houses of the General Assembly and after presentment to the Governor is of no consequence to the present inquiry. The legality of the adoption procedures was addressed and resolved in Kuphal. However, unlike the Court in Kuphal, we are called upon to determine the legislative intent behind the enabling act and not the legality of the guideline adoption procedures. I note that administrative interpretations, not disturbed by the legislature, are appropriate guides to legislative intent. 1 Pa.C.S.A. § 1921(c)(8); Hospital Assn. of Pa. v. MacLEOD, 487 Pa. 516, 523 n. 10, 410 A.2d 731, 734 n. 10 (1980).
[31] In Stevens, this Court held that the existence of a serious prior record alone was not sufficient to warrant a sentence greater than provided by the guidelines. In Drumgoole, this Court held that absence of a serious prior record is not a basis to sentence below the applicable guideline range. In both cases this Court determined that the presence or absence of a prior record was a factor which was accounted for within the sentencing ranges in the guidelines and thus could not be used twice.
[32] See Sentencing Commission Meeting Minutes for: April 25-26, 1980; May 17, 1980; August 8, 1980; January 8-10, 1981; June 19, 1981; and September 25, 1981 (on file with the Pennsylvania Commission on Sentencing).