536 A.2d 1348
COMMONWEALTH of Pennsylvania
v.
Edward PICKFORD, Appellant.
Superior Court of Pennsylvania.
Argued May 22, 1986.
Filed Dec. 18, 1987.
Reargument Denied Feb. 5, 1988.

Edward J. Bilik, Assistant Public Defender, Greensburg, for appellant.

Donna J. McClelland, Assistant District Attorney, Greensburg, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY and KELLY, JJ.

CIRILLO, President Judge:

Appellant Edward Vernon Pickford was convicted of rape, conspiracy to commit rape, theft, terroristic threats, and involuntary deviate sexual intercourse. Appellant was sentenced to 6½ to 15 years imprisonment on the charge of rape, 5 to 10 years on the charge of conspiracy to commit rape, 6½ to 15 years on the charge of involuntary deviate sexual intercourse, and 1 to 2 years on the charge of terroristic threats. These sentences were to be served concurrently. On appeal, Pickford raises issues concerning the alleged failure of the Commonwealth to comply with appellant's discovery requests, the admission of testimony relating to the victim's post-rape trauma, the admission of testimony concerning appellant's prior sexual relations with a third party, and the trial court's consideration of certain guidelines established by the Pennsylvania Commission on Sentencing. We affirm.

The evidence established that in the early morning hours of March 15, 1984, appellant and his co-conspirator, Paul Pastor, entered the victim's apartment. At that time, the victim was in her seventh month of pregnancy. Appellant grabbed her, forced her into the bedroom, and proceeded to engage in sexual intercourse with her. It was also established that appellant threatened to kill her if she told anyone of the incident. A short time later Pastor also raped the victim. The testimony revealed that appellant and the victim had known each other since August of 1983.

Following the victim's separation from her husband in January, 1984, the victim and appellant had a sexual relationship, which was terminated by the victim some three weeks prior to the incident.

Appellant's first contention is that the Commonwealth failed to provide him with full discovery of all exculpatory and inculpatory statements, thereby entitling him to a new trial. Prior to trial, appellant's counsel filed a written request for discovery. At a subsequent discovery hearing, the Commonwealth's attorney stated that their entire file had been turned over to appellant's counsel. At trial, it was revealed for the first time that the victim had admitted to a state trooper that she had had a consensual sexual relationship with appellant which occurred approximately one month prior to the incident. Appellant's counsel objected, claiming that the Commonwealth had violated Pa.R.Crim.P. 305 by failing to provide these statements. The court overruled the objection.

Rule 305(B)(1) requires the Commonwealth to provide "[a]ny evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the Commonwealth." Moreover, Rule 305(E) gives the court broad discretion in fashioning a proper remedy for any violation of the discovery rules, including the granting of a continuance. Here, the trial court recessed during cross-examination of the victim in order to allow appellant's counsel to interview the state trooper regarding the victim's statements. Appellant's counsel utilized this information in cross-examination of both the victim and the state trooper. In these circumstances, it is clear that whatever prejudice may have resulted from the tardy disclosure of this potentially exculpatory evidence was cured by giving appellant's counsel the opportunity to investigate the new information. *See Commonwealth v. Woodell*, 344 Pa.Super. 487, 496 A.2d 1210 (1985). Thus, appellant's request for a new trial, on this ground, was properly denied.

Appellant also claims that the court erred in not granting a mistrial when the Commonwealth did not disclose until trial certain inculpatory statements made by appellant. On direct examination the victim testified as to certain terroristic threats made by appellant prior to and following the rape. The first threat occurred when the victim terminated her relationship with appellant, when appellant said that he would "mess her up." The victim also testified that, following the incident of March 15, 1984, appellant threatened to "burn her house down," and stated he had "burned other houses down" on prior occasions. However, the information charging appellant with terroristic threats specifically avers that the basis of that charge was that appellant had threatened the victim with murder and arson. Having been put on notice of the nature of the terroristic threats charge, it would appear that appellant was not prejudiced by the failure to disclose these particular statements. Where the only prejudice is surprise to defense counsel, the remedy of declaring a mistrial, as appellant requests, is clearly inappropriate. *See Commonwealth v. Johnson*, 310 Pa.Super. 385, 395, 456 A.2d 988, 993 (1983). Appellant has not shown that the claimed violation of discovery denied him a fair trial. Hence, the court did not err in denying his motion for a mistrial. *Commonwealth v. Cacek*, 358 Pa.Super. 381, 386, 517 A.2d 992, 994 (1986).[1]

1. In a related issue, appellant argues that he is entitled to a new trial because the court erred in permitting the prosecution to place into evidence the fact that the victim had called Women's Services following the attack and had asked them to call the police. He further contends that the introduction of this evidence "opened the door" to the discovery of conversations between the victim and Women's Services. Appellant does not argue that the introduction of the phone call constituted a "consent" to discovery under the Confidential Communications to Sexual Assault Counselors Statute, 42 Pa.C.S.A. § 5945.1(b). Rather, he claims that the phone call was proof of "prompt complaint," and that he was deprived of the opportunity to challenge this evidence. However, the trial court instructed the jury not to consider the phone call in its deliberations, and the limited reference to Women's Services has not been shown to have caused any specific prejudice to appellant.

Appellant's next contention is that the court erred in allowing the Commonwealth to introduce evidence of the victim's post-rape trauma in order to prove lack of consent. Prior to trial, the Commonwealth sought to have an expert testify regarding the symptoms of rape trauma syndrome, a psychological condition observable in rape victims.[2] The court denied this request, but permitted the Commonwealth to introduce evidence concerning the victim's behavior and conduct several days after the incident. The victim testified that, following the rape, she moved out of the apartment for several days and when she returned she was frightened. She also testified that she had difficulty sleeping and eating because her nerves were "shot." The victim's mother testified that for some time following the incident the victim would wake during the night screaming. She also testified that her father stayed with her for several days so as to get her accustomed to living alone again. Appellant objected to this testimony as irrelevant and as being unduly prejudicial because it tended to bolster the victim's credibility.

**2.** Rape trauma syndrome is one kind of post-traumatic stress disorder. The essential feature of post-traumatic stress disorder is the development of characteristic symptoms after a psychologically traumatic incident that is usually beyond the range of ordinary human experience. Those symptoms typically involve reexperiencing the traumatic incident; numbing of responsiveness to, or lessened involvement with, the external world; and a variety of autonomic, dysphoric, or cognitive symptoms. *See* A. Burgess & L. Holmstrom, *Rape: Victim of Crisis* (1974); Burgess & Holmstrom, *Rape Trauma Syndrome,* 131 Am.J. Psychiatry 981 (1974). *See also In re: Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 38–43, 428 A.2d 126, 138–40 (1981); *see also* Massaro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony,* 69 Minn.L.Rev. 395, 427–32 (1975) (reviewing development of theory); Raum, *Rape Trauma Syndrome As Circumstantial Evidence of Rape,* 11 J. Psychiatry & L. 203, 207 nn. 14, 15 (1983) (collecting medical literature on theory); Comment, *Expert Testimony On Rape Trauma Syndrome: Admissibility And Effective Use in Criminal Rape Prosecution,* 33 Am.U.L.Rev. 417, 419 nn. 2–4 (1984) (same). *See Commonwealth v. Gallagher,* 353 Pa.Super. 426, 433–434, 510 A.2d 735, 738 (1986). Its relevance to the issue of consent is that if the victim exhibits the symptomology of rape trauma syndrome, it is likely that she was in fact raped and that she did not consent. *Gallagher,* 353 Pa.Super. at 456–457, 510 A.2d at 751 (Cavanaugh, J., dissenting).

While there is an abundance of case law dealing with the admissibility of expert testimony concerning rape trauma syndrome, *see, e.g., Commonwealth v. Gallagher,* 353 Pa. Super. 426, 510 A.2d 735 (1986); *People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 681 P.2d 291 (1984); *State v. Taylor,* 663 S.W.2d 235 (Mo.1984); *State v. Saldana,* 324 N.W.2d 227 (Minn.1982); *People v. Pullins,* 145 Mich.App. 414, 378 N.W.2d 502 (1985), the question of the admissibility of lay testimony has been dealt with only sporadically. In *Gallagher,* the only Pennsylvania case dealing with rape trauma syndrome, the question presented dealt with the qualifications of the Commonwealth's expert, and not whether the expert testimony was *per se* inadmissible.[3] However, *Gallagher* does provide a useful summary of the current state of the law in this field. The majority in *Gallagher* notes that in those states which have excluded expert testimony, the primary factor has been the development of the theory of rape trauma syndrome as a therapeutic tool rather than as a fact finding device. *Gallagher,* 353 Pa.Super. at 442, 510 A.2d at 743. However, in two of those cases, *People v. Pullins,* and *People v. Bledsoe, supra,* the courts have addressed the admissibility of lay testimony of post-rape trauma to prove lack of consent. In *Bledsoe,* the Supreme Court of California, while excluding expert testimony concerning rape trauma syndrome, held that it was not error to allow the victim, her mother, and several other witnesses to testify as to the victim's post-rape trauma. The court said:

> We hasten to add that nothing in this opinion is intended to imply that evidence of the emotional and psychological trauma that a complaining witness suffers after an alleged rape is inadmissible in a rape prosecution. As discussed in the statement of facts, in this case numerous witnesses—in addition to the rape counselor—described the severe emotional distress that Melanie exhibited both in the house immediately following the attack and in

---

**3.** In *Gallagher,* the court determined that expert testimony concerning rape trauma syndrome was admissible to explain a complainant's initial inability to identify her assailant.

subsequent weeks, and, as defendant implicitly concedes, there is no question but that such evidence was properly received. Lay jurors are, however, fully competent to consider such evidence in determining whether a rape occurred....

*Bledsoe, supra,* 36 Cal.3d at 251, 203 Cal.Rptr. at 400, 681 P.2d at 301. Similarly, in *People v. Pullins, supra,* the Michigan Court of Appeals specifically relied on *Bledsoe* in holding that non-expert testimony of post-rape trauma is relevant in determining whether a rape occurred. *Pullins,* 378 N.W.2d at 505.

We agree with the trial court that "it is within the lay-person's ability to understand the possible and probable effect of a forcible rape upon a person." Appellant's claim that he was unduly prejudiced by this testimony cannot prevail.[4]

■ Appellant next contends that the court erred in permitting the Commonwealth to cross-examine appellant concerning his prior sexual relations with a third person on the same date as the alleged rape. This contention is meritless in light of the fact that appellant presented evidence of a red mark on his neck, apparently received on the day of the attack, and apparently revealed to the jury for the purpose of showing that the victim was kissing appellant quite forcefully on the neck. Since this was relevant to the issue of consent, there was nothing improper in allowing the Commonwealth to cross-examine appellant to determine how he may have received the mark.

■ Appellant's final argument is that the court erred in imposing sentence under the Sentencing Guidelines. 204 Pa.Code Ch. 303. Specifically, appellant claims that the Pennsylvania Sentencing Commission exceeded its legislative authority in promulgating guidelines which permit the

4. Appellant also claims that a new trial should be granted because the victim's hysterical outcries following the jury's retirement affected their deliberations. The argument lacks merit since the jurors were polled following the verdict and none of them could determine what was said, even though some of them stated that they heard a commotion.

sentencing court to: (1) include juvenile adjudications, misdemeanor or otherwise, in computing defendant's prior record score; and (2) to include prior adult convictions, defined as "a case in which a verdict of guilty has been entered in the record and sentence has been imposed for an offense which occurred prior to the date of the offense[,]" 204 Pa. Code § 303.7(g), in determining defendant's prior record score.

We find Pickford's claims relating to the Guidelines to be moot in light of our supreme court's recent opinion in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987). In *Sessoms*, the court held that since the present Guidelines were the "product of a rejection resolution that was not presented to the Governor in violation of Article III, § 9 [of the Pennsylvania Constitution], they must be declared to be of no force at all." *Sessoms*, 516 Pa. at 38, 532 A.2d at 782.

However, we do not read *Sessoms* to require review of an otherwise legal sentence. *See id.*, 516 Pa. at 380, 532 A.2d at 783 (Papadakos, J., concurring). Accordingly, we affirm the judgment of sentence.

KELLY, J., concurs and dissents with an opinion.

KELLY, Judge, concurring and dissenting:

I join in that portion of the majority opinion which rejects appellant's assertions of trial error and affirms appellant's convictions. I dissent from that portion of the majority opinion which affirms judgment of sentence. I would remand for compliance with Pa.R.A.P. 2119(f) or, as there has been no compliance, deny allowance of appeal from the discretionary aspects of sentence.

I do not find that our Supreme Court's recent opinion in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987) permits as simple a disposition of appellant's challenge to the discretionary aspects of sentence as the majority opinion suggests. I do not read *Sessoms, supra,* to have declared that the guidelines shall in all cases be treated as

being invalid and of "no force at all." Majority, *supra*, at 453. To the contrary, the *Sessoms* majority strictly circumscribed its holding as follows:

This ruling is applicable to cases where the issue has been 'properly preserved at all stages of adjudication up to and including direct appeal.' *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).

516 Pa. at 380 n. 2, 532 A.2d at 782 n. 2. Thus, the issue of the general invalidity of the 1982 guidelines due to the unconstitutionality of the rejection procedures followed the legislature in 1981 (hereinafter *Sessoms* issue) may be waived, and in such cases the guidelines would not be treated as *generally* invalid. *See e.g. Commonwealth v. Samuels*, 516 Pa. 300, 532 A.2d 404 (1987) (hereinafter *Samuels, supra*, Pa.1987) (addressing merits of challenge to the validity of a particular provision when *Sessoms* issue was not preserved); *accord Commonwealth v. Hartz*, 367 Pa.Super. 267, 532 A.2d 1139 (1987) (Cirillo, P.J., concurring, Brosky and Johnson, JJ., join) (challenge to the constitutionality of a guideline provision may be waived); *id.*, 367 Pa.Superior Ct. at 270, 532 A.2d at 1140 (Kelly, J., concurring) (same).

Therefore, when the *Sessoms* issue has not been properly preserved, challenges to the discretionary aspects of sentence based upon alleged misapplication of guideline provisions (including challenges to the application of allegedly unconstitutional provisions) remain a proper basis for reversal, and would not be rendered moot by the *Sessoms* decision. 42 Pa.C.S.A. § 9781(c)(1); *see e.g. Samuels, supra* (Pa.1987). Logically, a sentence tainted by improper considerations is equally invalid whether it is tainted by consideration of invalid guidelines, an invalid provision of otherwise valid guidelines, or misapplication of a valid provision of valid guidelines. *Accord Commonwealth v. Sessoms, supra* (consideration of invalid guidelines was prejudicial error); *Commonwealth v. Samuels*, 354 Pa.Super. 128, 161–62, 511 A.2d 221, 238–39 (1986) (consideration of improperly increased guideline ranges was prejudicial error); *rev'd on*

*other grounds* 516 Pa. 300, 532 A.2d 404 (1987) (*Samuels, supra* Pa.1987); *and Commonwealth v. Dickison,* 334 Pa. Super. 549, 553, 483 A.2d 874, 876 (1984) (error in application of guidelines provisions was prejudicial, even when same sentence could be imposed if the guidelines had been properly applied).

On the other hand, the *Sessoms* decision has a profound effect on challenges advanced under 42 Pa.C.S.A. § 9781(c)(2) and (3).[1] The Supreme Court in *Sessoms, supra,* continued its erosion of the basis for our *former dictum* that "*only in exceptional cases* and for sufficient reasons may a court deviate from the guidelines." [2] The majority explained:

> Most important, the court has no 'duty' to impose a sentence considered appropriate by the Commission. The guidelines must only be 'considered' and, to ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them. Viewed in this manner, the guidelines are essentially a sophisticated compilation and distillation of a vast range

**1.** Sections 9781(b) and (c) provide:

> **(b) Allowance of appeal.**—The defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter.
>
> **(c) Determination on appeal.**—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

**2.** *Commonwealth v. Fluellen,* 345 Pa.Super. 167, 171, 497 A.2d 1357, 1359 (1985) (emphasis in original), *quoting Commonwealth v. Hutchinson,* 343 Pa.Super. 596, 598, 495 A.2d 956, 958 (1985).

of factors affecting the sentencing process in the abstract, accomplished by persons of expertise representing a broad spectrum of interests. The legislature with the governor's approval has deemed it proper that the findings of such a body, assembled to assist it in developing and overseeing a sound sentencing system, be given practical application in individual cases as well. We may say that in directing courts to consider these guidelines, just as they must consider a number of listed though non-exclusive factors in imposing probation, the legislature has done no more than direct that the courts take notice of the Commission's work.

516 Pa. at 377, 532 A.2d at 781.

The *Sessoms* opinion supports our conclusion in *Commonwealth v. Darden*, 366 Pa.Super. 597, 531 A.2d 1144 (1987) that:

... while the sentencing court is required to 'consider' the applicable guidelines, and while the reasons for any deviation from the applicable standard range of the guidelines must be in writing, the determination of whether the sentence is 'not appropriate,' 'clearly unreasonable,' or 'unreasonable' must be made with reference to the sentencing code *as a whole*, not solely with reference to the provisions of the sentencing guidelines. *Commonwealth v. Tuladziecki, supra*, 522 A.2d at 20; *see also* 42 Pa.C. S.A. 9781(b) and (c).

366 Pa.Super. at 608, 531 A.2d at 1150. (Emphasis in original). Thus, the refusal to *impose* (as opposed to consider) the applicable minimum sentence recommended by the guidelines, *by itself*, provides no basis to vacate sentence and raises no substantial question under 42 Pa.C.S.A. § 9781(b). *See* 42 Pa.C.S.A. § 9781(c)(2) and (3). Rather, to justify reversal, the sentence must: 1) be inside the guidelines *and* be clearly unreasonable considering the sentencing code as a whole; or 2) be outside guidelines *and* be unreasonable, considering the sentencing code as a whole.

In *Commonwealth v. Taylor*, 516 Pa. 21, 531 A.2d 1111 (1987), decided the same day as *Sessoms* and *Samuels*, our

Supreme Court dismissed as moot an appeal by the Commonwealth from a judgment of sentence in which the trial court refused to apply the deadly weapon enhancement provision of the sentencing guidelines; apparently, all appeals alleging the *failure to apply* the 1982 guidelines are moot. It is a general rule of appellate review that an order may be *affirmed* for any reason, whether or not raised or assigned in support of the order in the court below; [3] thus, the failure to preserve the *Sessoms* issue would not appear to prevent *affirmance* on *Sessoms* grounds when an appeal is taken from a judgment of sentence alleging as error the refusal of the trial court to apply the 1982 guidelines or any provision thereof. There can be no prejudicial error in the trial court's refusal to apply invalid guidelines.

Appellant raises the following issues on appeal:

DID THE PENNSYLVANIA SENTENCING GUIDELINE COMMISSION EXCEED IT"S [sic] LEGISLATIVE AUTHORITY IN PROMULGATING SENTENCING GUIDELINES WHICH PERMIT:

(a) The sentencing court to include juvenile adjudications, misdemeanor or otherwise, in computing defendant's prior record score.

(b) The sentencing court to include adult convictions subsequent to said conviction by which offense occurred prior to the incident conviction.

(Appellant's Brief at 1). Based upon the foregoing analysis of *Sessoms, Samuels* and *Taylor,* I find that neither of these challenges are rendered moot by our Supreme Court's decision in *Sessoms, supra.* This case is, in this respect, analytically indistinguishable from *Samuels, supra* (1987). Moreover, because appellant challenges the *application* of the guidelines as opposed to the *failure to apply* the guidelines, the *Taylor* decision does not control.

## II.

Appellant challenges a legal sentence based upon the application of guideline provisions which appellant alleges

3. *See Commonwealth v. Terry,* 513 Pa. 381, 404, 521 A.2d 398, 409 (1987).

to be invalid; these contentions are challenges to discretionary aspects of sentence. *See* 42 Pa.C.S.A. §§ 9781(b), 9781(c)(1); *Commonwealth v. Hartz, supra* (Cirillo, P.J., concurring; Brosky and Johnson, JJ., join); *id.* (Kelly, J., concurring).

Under Pennsylvania law, neither the defendant nor the Commonwealth may take an appeal as of right from the discretionary aspects of sentence. Rather, "[t]he defendant or the Commonwealth may file a petition for allowance of appeal of the discretionary aspects of sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals. Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under [the Sentencing Code]." 42 Pa.C.S.A. § 9781(b). Our Supreme Court indicated in *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), that three distinct steps must be taken to properly raise a challenge to the discretionary aspects of sentence: there must be a timely notice of appeal (*see* Pa.R.A.P. 902 & Note; Pa.R.A.P. 903); the challenge must be set forth in the statement of questions presented (*see* Pa.R.A.P. 2116(b)); and, the appellant must include in the brief, immediately preceding argument in support of the challenge, a separate, concise statement of the reasons for allowance of appeal under 42 Pa.C.S.A. § 9781(b) (*see* Pa.R.A.P. 2119(f)). 522 A.2d at 18–19; *see also* 42 Pa.C.S.A. § 9721(b); 42 Pa.C.S.A. § 9781(c)(1), (2) & (3).

In the instant case, timely notice of appeal was filed and appellant's challenge to the discretionary aspects of sentence was set forth in the statement of questions involved. (*See* Appellant's Brief at 3). However, appellant's brief does not contain the separate, concise statement of reasons for allowance of appeal required by Pa.R.A.P. 2119(f).

While this Court has on a few occasions found substantial (therefore sufficient) compliance with Pa.R.A.P. 2119(f) where the brief contains a concise statement of the reasons for allowance of appeal either in the Summary of Argument

or at the beginning of the Argument section, such an exception is not warranted in this case. *Cf. Commonwealth v. Darden,* 366 Pa.Super. 597, 602–603, 531 A.2d 1144, 1146–1147 (1987) (Summary of Argument contained a sufficient statement of reasons for allowance of appeal in a one issue appeal); *Commonwealth v. Muller,* 364 Pa.Super. 346, 350 & n. 2, 528 A.2d 191, 193 & n. 2 (1987) (summary of reasons for allowance of appeal at beginning of Argument section, *before argument,* constituted a sufficient compliance). Unlike the situation in *Darden* or *Muller,* in the instant case this Court would have to glean through appellant's entire Argument on this issue before we would be able to construct a brief summary of the reasons why appellant believes the sentence is excessive and that the guidelines have been misapplied. (Appellant's Brief at 23–26). This is precisely the approach *Tuladziecki, supra,* condemned.

The majority decline to exercise this Court's authority to direct counsel for appellant to file a separate, concise statement of the reasons for allowance of appeal under 42 Pa.C.S.A. § 9781(b) as required by Pa.R.A.P. 2119(f). *See Commonwealth v. Zeitlen,* 366 Pa.Super. 78, 530 A.2d 900 (1987); *Commonwealth v. Grove,* 363 Pa.Super. 328, 526 A.2d 369 (1987). Although I would direct compliance with Pa.R.A.P. 2119(f), in present absence of such compliance I would find that the brief contains *a substantial uncorrected procedural defect which precludes this Court from determining whether a substantial question has been presented. See Commonwealth v. Zeitlen, supra,* 366 Pa.Superior Ct. at 82, 530 A.2d at 902–03 (Kelly, J., concurring); *Commonwealth v. Hawthorne,* 364 Pa.Super. 125, 134–135, 527 A.2d 559, 564 (1987). Consequently, I would deny allowance of appeal as to appellant's challenges to the discretionary aspects of sentence. *But see Commonwealth v. Krum,* 367 Pa.Super. 511, 533 A.2d 134 (1987) *(en banc ).*[4]

4. In *Tuladziecki, supra,* our Supreme Court held that this Court was to determine whether a substantial question was presented by reference to the Pa.R.A.P. 2119(f) statement and not by the appellant's argument. The majority in *Krum* found that the failure to comply with

I note, however, that I would direct compliance only with respect to appellant's second challenge. As to the first challenge, I note that although this Court had previously opined that the Sentencing Commission lacked authority to include prior misdemeanors or juvenile adjudications in the prior record enhancement provisions of the sentencing guidelines (*see Commonwealth v. Tilghman*, 366 Pa.Super. 328, 531 A.2d 441 (1987) (*en banc*); *Commonwealth v. Washington*, 357 Pa.Super. 548, 516 A.2d 397 (1986); *Commonwealth v. Samuels*, 354 Pa.Super. 128, 511 A.2d 221 (1986)), our Supreme Court *has expressly rejected this contention. Commonwealth v. Samuels, supra* (Pa.1987); *cf. Commonwealth v. Washington, supra,* 516 A.2d at 398–408 (Kelly, J., dissenting). Thus, I find this claim to be *frivolous* and would deny allowance of appeal as to this issue without remanding for compliance with Pa.R.A.P. 2119(f). I note that the emphasis in *Commonwealth v. Tuladziecki, supra,* is on the requirement of precise compliance with the procedural rules before *granting* allowance of appeal. The same precision would not appear to be necessary to a disposition *denying* allowance of appeal. *Cf. Commonwealth v. Zeitlen, supra,* 530 A.2d at 905 (Kelly, J., concurring).

Pa.R.A.P. 2119(f) is a *procedural* error which can be waived; the *Krum* majority, however, gave no indication as to how the mandate of 42 Pa.C.S.A. § 9781(b) and *Tuladziecki, supra,* was to be met in absence of at least substantial compliance with Pa.R.A.P. 2119(f). I remain of the opinion that, without at least substantial compliance with Pa.R.A.P. 2119(f), *appellant will be unable to establish the existence of a substantial question* and, consequently, allowance of appeal must be denied. 42 Pa.C.S.A. § 9781(b).