561 A.2d 5

**COMMONWEALTH of Pennsylvania**

v.

**Neil Franklin DUNKLE, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1988.

Filed June 13, 1989.

318 .

Ronald C. Travis, Williamsport, for appellant.

Kenneth A. Osokow, Assistant District Attorney, Williamsport, for Com.

Before CAVANAUGH, OLSZEWSKI and KELLY, JJ.

OLSZEWSKI, Judge:

This is a direct appeal from the judgment of sentence following appellant's conviction for indecent assault, corruption of minors, and criminal attempt to commit involuntary deviate sexual intercourse. For the reasons stated below, we remand for a new trial.

In April of 1986, appellant was charged with rape, indecent assault, corruption of minors, and criminal attempt to commit involuntary deviate sexual intercourse. A jury trial commenced on March 23, 1987, and concluded on March 27, 1987. Appellant was found guilty of all of the charges except rape. Post-trial motions were filed and denied. Thereafter, appellant was sentenced to not less than two years and not more than four years on the criminal attempt to commit involuntary deviate sexual intercourse charge, with a concurrent sentence of not less than eighteen months and not more than three years on the corruption of minors charge. Sentence was reduced to judgment, and appellant filed a timely notice of appeal to the Superior Court on December 30, 1987.

The charges leveled against appellant arose out of an investigation by the state police following a report by appellant's stepdaughter that in April of 1983, appellant

entered the bathroom while the victim was taking a shower and, after forcing her to the floor, sexually assaulted her, forced her to engage in oral intercourse, and raped her.

On appeal to this Court, appellant raises the following seven issues: (1) whether evidence of defendant's prior misconduct was admissible at trial; (2) whether expert testimony on child abuse characteristics was admissible at trial; (3) whether non-disclosure in discovery of a calendar/diary by the Commonwealth precluded its use at trial;[1] (4) whether defense counsel was entitled to review psychiatric records of the victim; (5) whether questioning on re-direct which exceeded scope of cross-examination was permissible; (6) whether defense counsel should have been permitted to introduce evidence of a similar incident involving the victim; and (7) whether evidence that victim bled during subsequent act of sexual intercourse was admissible.[2]

Appellant's first allegation of error concerns the admission at trial of evidence concerning appellant's prior sexual misconduct towards the victim. Specifically, appellant contends that the trial court erred in permitting testimony that prior to the assault on the victim, the appellant engaged in voyeurism while the victim took showers and on one prior occasion had attempted to fondle her breasts while the

1. Appellant contends that a new trial is warranted because the trial court permitted the Commonwealth to use a document which it had knowledge of several months prior to trial but had not divulged to defense. See Pa.R.Crim.P. 305, Pretrial Discovery and Inspection. The document in question was a calender kept by the sister of the victim which she used to record significant events. Upon his objection, defense counsel was given an opportunity to review the document at trial before the Commonwealth used it in its examination of the witness. As we have already determined that this case must be remanded for a new trial, it is unnecessary to resolve appellant's claim that a violation of discovery occurred which warrants a re-trial.

2. Appellant sought to introduce this evidence to refute the victim's claim that appellant had sexual intercourse with her by establishing that the victim was a virgin at a point in time after the alleged rape. As appellant was acquitted of the charge of rape, we fail to understand, and appellant has not indicated, why this argument was raised on appeal. We, therefore, decline to discuss this issue.

victim pretended to be asleep.[3]

■ Evidence of other criminal conduct of an accused is generally inadmissible at trial except in certain limited circumstances. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1, *cert. denied, Banks v. Pennsylvania*, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d 162 (1987); *Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983); *Commonwealth v. Fuller*, 479 Pa. 353, 388 A.2d 693 (1978). One such limited circumstance is a prosecution for incest. *Commonwealth v. Bell*, 166 Pa. 405, 31 A. 123 (1895). The *Bell* Court held that evidence of a prior illicit relationship between the parties is admissible if *"it is one of a series of acts indicating continuousness of sexual intercourse."* 166 Pa. at 412, 31 A. at 123 (emphasis added). *Bell* set a precedent to which our Court has steadfastly adhered. *See e.g., Commonwealth v. McClucas*, 357 Pa.Super. 449, 516 A.2d 68 (1986) (trial court did not err in admitting evidence of defendant's sexual abuse of daughter over five-year period); *Commonwealth v. Rodriguez*, 343 Pa.Super. 486, 495 A.2d 569 (1985) (trial court did not err in admitting testimony that defendant, the victim's uncle, had admitted that he "used to" perform the illicit sexual act upon the victim when the victim was younger); *Commonwealth v. Ritchie*, 324 Pa.Super. 557, 472 A.2d 220 (1984), *case remanded*, 509 Pa. 357, 502 A.2d 148, *cert. granted, Pennsylvania v. Ritchie*, 476 U.S. 1139, 106 S.Ct. 2244, 90 L.Ed.2d 690 *aff'd in part rev'd in part*, 480 U.S. 39, 107 S.Ct. 989,

3. The Commonwealth contends that appellant's attempts to obtain review of the trial court's admission of this testimony on the grounds that the prior misconduct was too remote in time and did not constitute a continuous course of conduct on the part of appellant are improper because these contentions were not made at trial or in post-verdict motions and, accordingly, are waived. *Commonwealth v. Gordon*, 364 Pa.Super. 521, 528 A.2d 631 (1987). We have determined that this case must be remanded for a new trial because of improper admission of expert testimony. The issue of admission of testimony regarding defendant's prior misconduct, however, will be reviewed in the interest of judicial economy. As this issue is waived, it cannot provide a basis for remand. Our decision as to the merits of this claim, however, will provide guidance for the proper conducting of a new trial.

94 L.Ed.2d 40 (1987) (trial court did not err in permitting defendant's daughter to testify that he had been molesting her three or four times a week for a period of four years); *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980) (trial court did not err in admitting testimony by defendant's stepdaughter of a long and sordid pattern of sexual abuse; the victim was forced to submit to stepfather's sexual advances from the time when she was a third grader to the time she was in tenth grade and she left home); *Commonwealth v. Buser*, 277 Pa.Super. 451, 419 A.2d 1233 (1980) (trial court did not err in admitting evidence of defendant's sexual abuse of his daughter beginning when she was eight or nine years of age and continuing to age thirteen); *Commonwealth v. Leppard*, 271 Pa. Super. 317, 413 A.2d 424 (1979) (trial court did not err in admitting evidence of defendant's continuing sexual assaults on his daughter over a four-year period).

■ Instantly, the victim testified that she suspected appellant was spying on her while she was in the shower because he routinely retired to his bedroom during the times she showered. She testified that she, along with her sister, discovered that by removing a panel in the bedroom closet, one could see into the bathroom. Finally she related an incident where her mother discovered appellant on his knees in the bedroom closet while the victim was showering. The only other incident of misconduct which the victim testified to was the occasion where appellant attempted to fondle her breasts. Despite the morally repugnant nature of these alleged acts and the crimes for which appellant has been convicted, we are constrained to find that testimony regarding these acts was improperly admitted for the reason that the isolated occurrences of prior misconduct testified to by the victim simply do not constitute "a series of acts indicating continuousness of sexual intercourse." *Bell, supra.* By restricting the admissibility of evidence pertaining to prior misconduct to the above, it is apparent that the *Bell* Court was guarding against admission of evidence of isolated acts. *See, Commonwealth v. Rodriguez, supra* n.

4. *See also, Commonwealth v. Campbell,* 342 Pa.Super. 438, 493 A.2d 101 (1985), wherein our Court stated:

> [O]ur sedulous review of the law in this jurisdiction, dealing with incest, statutory rape and indecent assault, has failed to unearth one decision condoning the admission of a *single,* prior accounting of a sexual assault (so distant in time as the one at bar) to buttress a prosecutrix's complaint of a subsequent sexual assault charged against the same assailant where there is no evidence of a continuous course of conduct linking the incidents of molestation.

*Campbell,* 342 Pa.Super. at 444, 493 A.2d at 105 (emphasis added). It was, therefore, improper for the trial court to permit testimony of appellant's prior misconduct.

Appellant's next allegation of error is that the trial court improperly admitted the expert testimony of Susan Shade, a Child Protective Service supervisor for the Department of Children and Youth. Ms. Shade's testimony concerned the dynamics of interfamily sexual abuse and behavior patterns of the child-victim. Pursuant to current case law, we are constrained to agree.[4]

 The question of a witness's credibility is reserved exclusively for the jury. *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988). As such, expert testimony which serves to bolster the veracity of a child sexual abuse victim impermissibly infringes upon the province of the jury. *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986). Accordingly, this Court must ascertain the purpose for which Ms. Shades' testimony was offered.

In *Seese, supra,* the Pennsylvania Supreme Court determined that the expert testimony in question consisted of expert opinion regarding the veracity of the victim. In part, the expert had testified that:

---

4. Changes in decisional law which occur during litigation will generally be applied to cases pending on appeal. *Aletto v. Aletto,* 371 Pa.Super. 230, 537 A.2d 1383 (1988).

It is very unusual that a child would lie about sexual abuse ... [P]repubertal children usually do not lie about matters of sexual abuse no matter how chaotic or uncomfortable their home situation is ...

*Seese,* 512 Pa. at 441–442, 517 A.2d at 921.

Upon determining that this testimony was offered to sustain the credibility of the victim, the Court determined that it was inadmissible. In doing so, the Court stated that:

Such testimony, admitted as evidence, would encourage jurors to shift their focus from determining the credibility of the particular witness who testified at trial, allowing them instead to defer to the so-called "expert" assessment of the truthfulness of the class of people of which the particular witness is a member.

*Seese,* 512 Pa. at 443–44, 517 A.2d at 922. As such, the primary concern with regard to this type of testimony is that it has the potential to invade upon the province of the jury and incorrectly influence their decision as to the credibility of a witness.

■ Instantly, upon review of the record, it is apparent that the victim questionably delayed in reporting the incident and failed to recall certain details of the incident. As such, the credibility of the victim was somewhat shaky. In response, the Commonwealth offered the expert testimony of Ms. Shade to explain: (1) a victim's delay in reporting an offense; (2) a victim's inability to recall exact dates and times; and (3) the victim's behavior as the result of the offense. In offering this testimony, the Commonwealth clearly hoped to legitimize the victim's lengthy delay in reporting the incident and her failure to recall certain details of the incident, thereby allowing the jury to accept her version of the facts. In essence, this only serves to bolster the credibility of the victim. Since, however, an expert's testimony may not be utilized solely to enhance the veracity of a witness, we find that the trial court erred in admitting the expert testimony of Susan Shade.

Appellant's next assignment of error concerns the handling by the trial court of records pertaining to the victim

while she was undergoing counselling at a private psychiatric center.[5] Prior to trial, appellant filed an omnibus pre-trial motion requesting the court to order the release of records from the Lycoming County Children and Youth Services pertaining to the incidents at issue in this case. After consideration of this motion, the trial court ordered the Commonwealth, which was in possession of these records, to produce the records for an *in camera* review for any material that was properly discoverable. After such review, the trial court provided appellant with various statements made by the victim and instructed appellant that if he believed the records contained other discoverable material and presented a colorable argument that it existed and was discoverable, the trial court would release the information.

The trial court's ruling and handling of this matter was based on the case of *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *Ritchie*, the respondent, charged with rape, involuntary deviate sexual intercourse, incest and corruption of a minor, sought access to CYS files which he alleged contained exculpatory evidence. The trial judge refused to order CYS to disclose the files.[6]

5. It is not indicated definitely in the transcript whether the records in contention are CYS files or records of a private institution. In his omnibus pre-trial motion, appellant refers to CYS files; in the parties' briefs, however, reference is made to the records of the victim's treatment at a private psychological counselling center. We assume, although it is not stated by either party, that CYS was involved in the victim's treatment at the center. We note that the expert witness in this case worked for CYS and had examined the victim at one point following the incidents. At any rate, the parties' arguments are based upon the confidentiality afforded CYS files. We will, therefore, proceed on that basis.

6. The pertinent statute involved in this dispute is 11 Pa.Stat.Ann. § 2215, which provides in part:

(a) Except as provided in section 14 reports made pursuant to this act including but not limited to report summaries of child abuse ... and written reports ... as well as any other information obtained, reports written or photographs or x-rays taken concerning alleged instances of child abuse in the possession of the department, a county children and youth social service agency or a child protective service shall be confidential and shall only be made available to:

On appeal to the Superior Court, *Ritchie* claimed that failure to disclose the records violated the Confrontation Clause of the Sixth Amendment. The Superior Court agreed and remanded the case for further proceedings directing, however, that the trial judge was to examine the confidential material *in camera* and release only the verbatim statements made by the victim to the CYS counselor, who could then argue the materiality label to Ritchie's lawyer. If the trial judge determined that the lack of information was prejudicial, Ritchie would be entitled to a new trial. *Commonwealth v. Ritchie*, 324 Pa.Super. 557, 472 A.2d 220 (1984).

On the state's appeal, our Supreme Court agreed that the conviction should be vacated and the case remanded to determine whether a new trial should be granted. The Supreme Court, however, ordered that defense counsel was entitled to review the entire file for any useful evidence. *Commonwealth v. Ritchie*, 509 Pa. 357, 502 A.2d 148 (1985).

Upon review by the United States Supreme Court, the decision rendered by the Pennsylvania Supreme Court was affirmed to the extent that it ordered a remand for further proceedings. The United States Supreme Court stated:

Ritchie is entitled to have the CYS file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by CYS contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction.

*Ritchie*, 480 U.S. at 58, 107 S.Ct. at 1002, 94 L.Ed.2d at 58.

■ Instantly, appellant contends that the trial court's decision to review the records *in camera* and release relevant discoverable information was error for the following reasons: (1) *Ritchie* dealt with a situation where neither the

\* \* \* \* \* \*

(5) A court or competent jurisdiction pursuant to a court order.

prosecutor nor the defense had access to the file, whereas in the instant case the prosecutor had access to the full psychiatric record of the victim; and (2) the victim has waived confidentiality by releasing the records to the Commonwealth. As a result of the trial court's alleged error, appellant contends he is entitled to a new trial or, in the alternative, a remand so that he may review the file in its entirety and argue that certain nondisclosed information was material and the lack thereof at trial prejudiced him. We find no merit to any of appellant's arguments with respect to this issue.

We deal first with appellant's argument that the prosecutor's access to the file in the instant case distinguishes *Ritchie*. Initially, we note that simply because the Commonwealth is in possession of a file does not require that the defense have complete access to it.

A defendant is entitled to a court inspection of the Commonwealth's investigatory files only when there exists at least some reason to believe the inspection would lead to the discovery of evidence helpful to the defense.

*Commonwealth v. Gartner*, 475 Pa. 512, 381 A.2d 114 (1977).

Furthermore, we feel that the following passage of *Pennsylvania v. Ritchie* speaks to this issue:

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. *See United States v. Bagley*, 473 U.S. [667] at 675, 87 L.Ed.2d 481, 105 S.Ct. [3375 at 3380 (1985)]. Although the eye of an advocate may be helpful to a defendant in ferreting out information, *Dennis v. United States*, 384 U.S. 855, 875, 16 L.Ed.2d 973, 86 S.Ct. 1840 [1851] (1966), this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information.

*Ritchie*, 480 U.S. at 59, 107 S.Ct. at 1003, 94 L.Ed.2d at 58–59.

■ Appellant's next argument that the victim has waived confidentiality by releasing the records to the Commonwealth flies flagrantly in the face of the state's undeniably paramount interest in confidentiality. We are surprised that appellant did not take this argument further and contend that the victim waived any right to confidentiality merely by seeking psychological counselling or by reporting the crime to the state police. Appellant appears to believe that the victim has no interest in seeing her abuser brought to justice. His unsubstantiated argument in this regard is offensive in its obvious disregard and insensitivity to the victims of child sexual abuse and the difficulty encountered by the Commonwealth in detecting and prosecuting the offender. Once again, *Pennsylvania v. Ritchie* offers a perspective on this issue:

> To allow full disclosure to *defense* counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information. If the CYS records were made available to *defendants,* even through counsel, it could have a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse.

*Ritchie,* 480 U.S. at 60, 107 S.Ct. at 1003, 94 L.Ed.2d at 59 (emphasis added).

Finally, we must deal with appellant's remaining contention that our Court, in construing *Ritchie,* upheld the statutory psychologist-client privilege vis-a-vis defense discovery of those records and used as a basis for that decision the fact that the prosecution did not have access to the confidential file. *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988). Appellant's argument misstates our discussion and determination in *Kyle.* In *Kyle* our Court discussed *Pennsylvania v. Ritchie, supra,* as it pertained to a defendant's rights under the Confrontation Clause of the Sixth Amendment. We also discussed the relation of the Due Process Clause of the Fourteenth Amendment to a defendant's inability to obtain pretrial information. At issue in

*Kyle* was the psychologist-client privilege protected by 42 Pa.C.S.A. § 5944. After a discussion of *Ritchie,* our Court concluded that a determination must be made as to whether a compelling public interest supported the psychologist-client privilege. Our Court then embarked on a lengthy analysis of the public policies underlying the privilege, in addition to the relevant cases in this and other jurisdictions, and concluded that the interests protected by the privilege are substantial. Weighing these interests against the interest of a defendant in disclosure of a victim's file, we found the scale tilted in favor of the psychologist-client privilege. This was the linchpin of our decision in *Kyle.* We merely buttressed that decision by noting that the defense would not be placed at a disadvantage as the Commonwealth, likewise, did not have access to the file. To contend, as appellant does here, that our Court somehow in construing *Ritchie* found that a basis for upholding the psychologist-client privilege was the fact that neither the prosecution nor the defense had access to the file, is a severe misinterpretation and misrepresentation of the *Kyle* opinion.

Furthermore, it must not be forgotten that in the instant case appellant was not deprived of the benefit which information in a CYS file may have provided him. Upon review of the file by the trial court, the information deemed to be material to appellant's defense was provided to him. Furthermore, had appellant been aware of specific information in the file, he was free to request it and argue its materiality. Additionally, the trial court was under a duty to disclose information which initially may have appeared immaterial but became important as the proceedings progressed. We note that the trial judge informed defense counsel that he would do exactly that in the instant case. (N.T. p. 256.) The trial court's actions in this case afforded appellant all that he was entitled to under *Pennsylvania v. Ritchie.* There was no error committed by the trial court, and appellant's attempts to distinguish *Ritchie* lack merit.

 Appellant's next allegation of error is that the trial court erred in permitting the Commonwealth to intro-

duce evidence in the redirect examination of witness Fortins which went beyond the scope of cross-examination. The alleged error arose in the following context. Witness, Ms. Jean Fortins, was not questioned on direct examination regarding a conversation with appellant following his arrest concerning whether he committed the offenses. The witness also was not questioned on cross-examination regarding this matter. Testimony regarding this matter, however, was elicited during redirect examination. Defense counsel objected at trial and was overruled.

Appellant relies on *Catina v. Maree*, 498 Pa. 443, 447 A.2d 228 (1982), for the rule that one who calls a witness is required to elicit on direct examination all that is wished to be proved by that witness. While this may be the general rule, we note that the order in which testimony is admitted is within the discretion of the trial court, whose decision will not be reversed absent an abuse of discretion. *Commonwealth v. Smallwood*, 497 Pa. 476, 442 A.2d 222 (1982); *Commonwealth v. Johnson*, 355 Pa.Super. 123, 512 A.2d 1242 (1986) (citations omitted). Furthermore, the discretion of the trial judge to vary the order of proof is wide. A party may be permitted to bring out on redirect examination relevant evidence which inadvertently the party failed to bring out on direct. *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975); *Commonwealth v. Grove*, 363 Pa.Super. 328, 526 A.2d 369 (1987), *appeal denied*, 517 Pa. 630, 539 A.2d 810 (1987). Finally, *Catina v. Maree* is contrary to the instant case in that the matters brought on redirect examination in *Catina* were matters which could not have been testified to on direct examination, specifically opinion evidence and hearsay testimony. For these reasons, we find that the trial judge did not err in making the above decision.

Appellant next contends that the trial court erred in not permitting the defense to cross-examine the victim concerning an alleged incident where another individual came into the bathroom while the victim was showering. The defense

sought to introduce testimony on this point to show that the victim had confused the appellant with another individual.

 The scope and manner of cross-examination are within the sound discretion of the trial judge, whose decisions will not be overturned absent an abuse of discretion. *Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984). In determining the extent of cross-examination, the trial judge may consider whether matter is collateral and whether testimony is likely to confuse or mislead the jury. *Commonwealth v. Hammond*, 308 Pa.Super. 139, 454 A.2d 60 (1982); *Commonwealth v. Brinton*, 275 Pa.Super. 304, 418 A.2d 734 (1980). Appellant's argument that the victim confused him with another individual who allegedly entered the bathroom while she was showering is speculative. At trial, defense counsel cross-examined the victim concerning the accuracy of her memory. This was sufficient to test her credibility on this issue. Speculative contentions, such as appellant sought to have introduced, would only have served to distract the jury from absorbing the substance of the victim's testimony and determining her credibility. Appellant's contention is therefore meritless.

For the reasons stated above, we vacate appellant's conviction and remand for a new trial. Order vacated. Jurisdiction relinquished.

KELLY, Judge, dissenting:

I respectfully dissent. Although I agree with the majority's resolution of appellant's fourth, fifth, sixth and seventh contentions, I disagree with its resolution of the first, second, and third contentions. I find no merit in the appeal, and would affirm judgment of sentence.

## I. *Issues of Agreement*

I agree that defendant was not entitled to review privileged psychiatric records of the victim. The dictates of *Pennsylvania v. Richie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), regarding defense access to such materials were complied with fully. I wholeheartedly agree with the majority's rejection of appellant's attempt to construe

*Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied* 518 Pa. 617, 541 A.2d 744 (1988), as limiting the privilege against disclosure to cases when the Commonwealth, as well as the defendant, has been denied full access to the file. I note that in such cases the Commonwealth stands in a relationship to the victim sufficiently analogous to the attorney/client relationship to warrant continuation of the patient/client privilege after disclosure of information covered by that privilege to the Commonwealth's prosecuting attorney. Moreover, disclosure of such information to the Commonwealth attorney may be both necessary and appropriate to avoid questions opening the door to cross-examination regarding privileged matters at trial.

In the past, some defense counsel made a practice of smearing sexual assault victims with irrelevant innuendo and character assassination. Unlimited access to privileged psychiatric or counseling records would not only be invasive by itself, but would also provide ammunition for a renewal of such assaults. Today, fortunately, a more enlightened approach prevails, and defense counsel is only provided with such information when the trial court, upon *in camera* inspection, deems the material relevant to legitimate issues at trial. All other information remains, as it should be, privileged and confidential.

I also agree that the trial court did not abuse its discretion in permitting the Commonwealth to redirect Ms. Jean Fortins regarding a conversation the witness had with appellant, despite the fact that the redirect examination was outside the scope of the cross-examination of that witness. Such matters are within the sound discretion of the trial court. When, as here, neither bad faith nor prejudice is indicated by the variance in the order of the presentation of the evidence, the action of the trial court will be upheld. *See Commonwealth v. Johnson,* 355 Pa.Super. 123, 139–44, 512 A.2d 1242, 1251–52 (1986); *accord Commonwealth v. King,* 378 Pa.Super. 553, 549 A.2d 195 (1988).

334

Finally, I agree that the trial court did not abuse its discretion in limiting appellant's cross-examination regarding an incident when another person allegedly entered the bathroom when the victim was in the shower, or in refusing to admit blood stained panties in support of appellant's claim that he could not have raped the victim because the panties established that she was still a virgin after the time that she was alleged to have been raped. Such matters are left to the sound discretion of the trial court. *See Commonwealth v. Grove*, 363 Pa.Super. 328, 346, 526 A.2d 369, 378 (1987). The evidence here vaguely, if at all, supported the inferences urged by appellant and presented a substantial risk of confusion and distraction on wholly collateral issues. Hence, I find no abuse of discretion in the decision to exclude the evidence.

Here ends my agreement with the majority.

## II. *Issues of Disagreement*

First, I note that with respect to the discovery violation which the majority finds it unnecessary to address, I would find that the trial court did not abuse its discretion in permitting the evidence to be used. Appellant has failed to demonstrate any actual prejudice arising from the discovery violation which could reasonably be said to have *compelled* the trial court to exclude the evidence. Nor is their any evidence that the violation arose from bad faith conduct on the part of the Commonwealth. *See Commonwealth v. Pickford*, 370 Pa.Super. 444, 448–51, 536 A.2d 1348, 1350–51 (1987).

I cannot agree that the admission of evidence of other criminal acts by appellant was an abuse of discretion in this case. The challenged evidence taken together, and in the context of the charges presented in this case, plainly gave rise to a reasonable inference that *appellant was engaged in a continuous and gradually escalating course of sexually exploitive and abusive conduct toward the victim.*

Specifically, I find that the evidence regarding the incidents which the majority finds to be inadmissible must be considered together with the victim's assertion that appel-

lant *regularly* retired to his bedroom when she was in the shower, that there was a removable panel which allowed him to voyeuristically view the victim from his bedroom closet, and that he was caught in the act of voyeuristically viewing her from that closet on one occasion. Rather than being isolated and individual, the incidents formed part of an all too recognizable pattern, common to intrafamilial sexual abuse cases. Indeed, I would have considered the exclusion of such evidence an abuse of discretion. *See Commonwealth v. Thek*, 376 Pa.Super. 390, 402 n. 9, 546 A.2d 83, 89 n. 9 (1988); *Commonwealth v. Allem*, 367 Pa.Super. 173, 182 n. 3, 532 A.2d 845, 849 n. 3 (1987); *see also* Myers, *Uncharged Misconduct Evidence in Child Sexual Abuse Litigation,* —— Utah L.Rev. 479, 479–568 (1988).

I also disagree with Judge Olzewski's suggestion that the expert testimony in this case was impermissibly *general.* Evidence presented at trial established that there was a lengthy delay in reporting the incident, the victim omitted various details of the incident when she reported it, and there were various observable behavioral changes in the victim following the date the incident occurred. In its proffer with respect to the expert testimony, the Commonwealth specifically indicated that the evidence to be presented was intended to assist the jury in determining the relevance of and weight to give those facts in their deliberations. The fact that the expert did not, herself, link her general expert testimony to the evidence presented, arose from the trial court's express admonition to her that she *not* do so. The reason for the trial court's admonition was its solicitousness for appellant's interest in not having the jury confused or overawed by the expert testimony. Instead, the link between the facts presented and the expert's *relevant* explanation of various normative responses and psycho-social dynamics in child sexual abuse cases was left to the arguments of counsel and the deliberations of the jury.

Concededly, in the recent past, our Supreme Court has expressed concern regarding the potential for expert over-reaching and usurpation of the jury's function, as well as juror misunderstanding of expert testimony, in cases involving expert testimony concerning various recognized "syndromes."[1] Our Supreme Court's most recent opinion, however, indicated apparent willingness to reconsider the question of "syndrome" testimony. *See Commonwealth v. Stonehouse,* 521 Pa. 41, 555 A.2d 772 (1989) (plurality).

There is a wide and growing body of research concerning the existence of various myths and misconceptions entertained by victims, offenders, medical personnel, judges, and jurors, which bear directly on the need for expert testimony in sexual abuse cases.[2] Likewise, there is a wide and growing body of research regarding various normative and individualistic psycho-social responses to sexual abuse which form the emperical basis for expert testimony regard-

1. *See Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988); *Commonwealth v. Rounds,* 518 Pa. 204, 542 A.2d 997 (1988); *Commonwealth v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986); *see also Commonwealth v. Zamarripa,* 379 Pa.Super. 208, 549 A.2d 980, 981 (1988).

2. *See e.g.* Corder & Whiteside, *A survey of Jurors Perception of Issues Related to Child Sexual Abuse,* 6 Am.J.For.Psych. 37, 37–43 (1988); Saunders, *A Comparative Study of Attitudes Toward Child Sexual Abuse Among Social Work and Judicial System Professionals,* 12 Child Abuse & Neglect 83, 83–90 (1988); Ringwalt & Earp, *Attributing Responsibility in Father—Daughter Incest,* 12 Child Abuse & Neglect 273, 273–81 (1988); Larsen & Long, *Attitudes toward Rape,* 24 J.Sex. Research 299, 299–304 (1988); Frazier & Borgida, *Juror Common Understanding and the Admissibility of Rape Trauma Syndrome Evidence in Court,* 12 Law and Hum.Behav. 101, 101–22 (1988); Cleary, *Rape Offenders' Perceptions of Victim Attitudes,* 6 Am.J.For.Psych. 57, 57–65 (1988); Goodman, *et al.,* When a Child Takes the Stand: *Juror's Perceptions of Children's Eyewitness Testimony,* 11 Law & Hum.Behav. 27, 27–40 (1987); Eisenberg, Owens & Dewey, *Attitudes of Health Professionals to Child Sexual Abuse and Incest,* 11 Child Abuse & Neglect 109, 109–16 (1987); Bond & Mosher, *Guided Imagery of Rape: Fantasy, Reality, and the Willing Victim Myth,* 22 J.Sex.Research 162, 162–83 (1986); Waterman & Foss–Goodman, *Child Molesting: Variables Relating to Attribution of Fault to Victims, Offenders, and Non–Participating Parents,* 20 J.Sex.Research 329, 329–49 (1984); *see also* Warsaw, *I Never Called It Rape, passim* (1988); Crewdson, *By Silence Betrayed, passim* (1988); Helfer & Kempe, *Child Abuse and Neglect, passim* (1976).

ing sexual abuse generally, as well as regarding various "syndromes." [3] While there is undoubtedly potential for the usurpation of the jury's function and/or misunderstanding of "syndrome" testimony, a wide and growing body of legal scholarship has provided an analytical framework for determining and permitting *appropriate use* of such testimony.[4] With regard to the risk that jurors would misappre-

3. *See e.g.* Murnen, Perot & Byrne, *Coping With Unwanted Sexual Activity: Normative Responses, Situational Determinants, and Individual Differences,* 26 J.Sex.Research 85, 85–106 (1989); Seigel, *et al., Resistence to Sexual Assault: Who Resists and What Happens,* 79 J.Am.Pub. Health 27, 27–31 (1989); French, *Young Childrens' Response to "When" Questions: Issues of Directionality,* 60 Child Development 225, 225–36 (1989); Cling, *Rape Trauma Syndrome: Medical Evidence of Nonconsent,* 35 Med.Tr.Tech.Q. 154, 154–81 (1988); Rynd, *Incidence of Psychometric Symptoms in Rape Victims,* 24 J.Sex.Research 155, 155–61 (1988); R[?]msza, Berg & Locke, *Sexual Abuse: Somatic and Emotional Reactions,* 12 Child Abuse & Neglect 201, 201–08 (1988); Cohen & Mannarino, *Psychological Symptoms in Sexually Abused Girls,* 12 Child Abuse and Neglect 571, 572–77 (1988); King, Hunter & Runyan, *Going to Court: The Experience of Child Victims of Intrafamilial Sexual Abuse,* 13 J.Health Politics, Policy and Law 705, 705–21 (1988); Muehlenhard & Cook, *Men's Self-Reports of Unwanted Sexual Activity,* 24 J.Sex.Research 58, 58–72 (1988); Jampole & Weber, *An Assessment of the Behavior of Sexually Abused and Non–Sexually Abused Children With Anatomically Correct Dolls,* 11 Child Abuse and Neglect 187, 187–92 (1987); Tong, *et al., Personality Development Following Sexual Abuse,* 11 Child Abuse and Neglect 371, 371–83 (1987); Cantwell, *Update on Vaginal Inspection as it Relates to Child Abuse in Girls Under Thirteen,* 11 Child Abuse and Neglect 545, 545–46 (1987) (updating, 7 Child Abuse and Neglect 171, 171–76 (1983)); Tedesco & Schnell, *Children's Reactions to Sex Abuse Investigation and Litigation,* 11 Child Abuse and Neglect 267, 267–72 (1987); Bard, *et al., A Descriptive Study of Rapists and Child Molesters,* 5 Behav.Sci. & L. 203, 203–20 (1987); Nelson, *Incest: Self–Report Findings from a Non–Clinical Sample,* 22 J.Sex.Research 463, 463–77 (1987); Lizotte, *The Uniqueness of Rape: Reporting Assaultive Violence to the Police,* 31 Crime & Delinquency 169, 169–90 (1985); Wilmot, *Sexual Drinking and Drift,* J. Drug Issues 1, 1–16 (1981); *see also* Warsaw, *supra;* Crewdson, *supra;* Helfer & Kempe, *supra.*

4. *See* Serrato, *Expert Testimony in Child Sexual Abuse Prosecutions: A Spectrum of Uses,* 68 B.U.L.R. 155, 155–92 (1988); McCord, *Syndromes, Profiles, and Other Mental Exotica: A New Approach to the Admissibility of Nontraditional Psychological Evidence in Criminal Cases,* 66 Ore.L.Rev. 19, 19–108 (1987); Roe, *Expert Testimony in Child Sexual Abuse Cases,* 40 U.Miami L.Rev. 97, 97–113 (1985); *see also* Donahue, *Another Door Close: Rape Trauma Syndrome,* 23 Gonz. L.Rev. 1, 1–35 (1987–88); Note, *Expert Testimony on Rape Trauma Syndrome: An Argument For Limited Admissibility,* 63 Wash.L.Rev.

hend or give undue weight to such testimony, at least two recent articles have demonstrated effective cross-examination techniques to minimize such dangers.[5]

Whatever may be the precise bounds and limits which must be put on "syndrome" testimony to protect a defendant's legitimate interests, I find no error or abuse of discretion in the admission of the expert testimony provided in this case. Upon careful review of the record, especially the testimony of the well-qualified expert in this case, I find that the testimony was both relevant and helpful, rather than irrelevant and prejudicial. *See Commonwealth v. Thek, supra,* 546 A.2d at 87; *Commonwealth v. Pearsall,* 368 Pa.Super. 327, 331 n. 1, 534 A.2d 106, 108–09 n. 1 (1987); *Commonwealth v. Emge,* 381 Pa.Super. 139, 146–149, 553 A.2d 74, 77–79 (1988) (Brosky, J. dissenting; citing *Pearsall* ).

The majority has failed to identify a single specific statement by the expert which was erroneous, inflammatory, misleading, or confusing. Assuming, *arguendo,* that some or all of the expert testimony was irrelevant, it still has not been shown how an arguable waste of trial time prejudiced the defendant or compromised the truth determining function of the trial. That irrelevant testimony may have been admitted at trial, is certainly not, by itself, grounds for reversal. Likewise, after review of the expert testimony, I

1063, 1063–86 (1988); Lorenzen, *The Admissibility of Psychological Testimony in Cases Involving the Sexual Misuse of a Child,* 42 U.Miami L.Rev. 1033, 1033–72 (1988); Feeny, *Expert Psychological Testimony on Credibility Issues,* 115 Mil.L.Rev. 121, 121–77 (1987); Cacciola, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases,* 34 UCLA L.Rev. 175, 175–205 (1986); Massaro, *Experts, Psychology, Credibility, and Rape,* 69 Minn.L.Rev. 395, 395–470 (1985); Wallace, *The Syndrome Syndrome,* 37 U.Fla.L.Rev. 1035, 1035–58 (1985); *cf.* I Winkelreid, *The Bases of Expert Testimony,* 67 N.C.E.R. 1, 1–27 (1988) (discussing the analysis of the syllogistic structure of expert testimony in determining admissibility). *But see* Note, *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims,* 74 Geo.L.J. 429, 429–56 (1985).

5. *See* Miller, *Cross–Examination of Expert Witnesses: Dispelling the Aura of Reliability,* 42 U.Miami L.Rev. 1073, 1073–99 (1988); Goldstein, *Psychiatrists on the Hot Seat: Discrediting Doctors by Impeachment of Their Credibility,* 16 Bull.Am.Acd.Psych.L. 255, 225–34 (1988).

did not find a single statement which presumed to pass on the victim's credibility or veracity individually or as a putative member of a class of victims. I find that the corroborative effects of the expert testimony in this case did not in any way usurped the fact finding or credibility determining functions of the jury. *See Commonwealth v. Thek, supra; Commonwealth v. Pearsall, supra; Commonwealth v. Emge, supra* (Brosky, J., dissenting).

## Conclusion

Based on the foregoing, I dissent.